THE TOWN OF WATERFORD v. THE TOWN OF FAYSTON.

*Settlement of paupers.*

If a person having a settlement in this state removes and resides for a time in another state, but subsequently returns to this, his residence while abroad is not to be considered in determining his settlement here.

His former settlement, though it may be regarded as suspended while he was absent, is revived upon his return; and though that settlement was only a derivative one, it will be revived not only as to himself, but also to his adult children who were born out of the state, but have removed to, and reside in it.

In this case the grandfather of the pauper had a settlement in this state, but removed to New Hampshire, where the father of the pauper, who, while a minor, removed with him, was subsequently married, and the pauper born. Subsequently the grandfather, and at a later period the pauper, and at a still later period the father returned and took up their residence in this state; but neither of them gained any settlement here after their return. *Held*, that after the father's return, both he and the pauper had the settlement which the grandfather had previous to his removal to New Hampshire.

APPEAL FROM AN ORDER OF REMOVAL of Delight Foster, a pauper, from the town of Waterford to the town of Fayston. It was conceded that the pauper was chargeable to the town of Waterford at the date of the order, and in reference to her settlement the following facts were agreed upon:

The pauper was the daughter of Nathaniel Foster, who was the son of Joel Foster, who removed from the state of New Hampshire into Fayston with his family about the year 1811, and lived there three years. Nathaniel Foster was at that time (1811) about fourteen years of age, and lived with his father's family. He was born in New Hampshire, his father being then a citizen of that state. Joel Foster removed back to New Hampshire, and with his family resided there about six years, and then returned to Fayston; but Nathaniel Foster in the meantime had married his wife in New Hampshire and remained there, and the pauper had at this time been born in that state. Some time after this the mother of the pauper came to Vermont and resided with Joel Foster, without her husband, who went to parts unknown; and she intermarried with one Fulford and resided with him several years in Danville and other towns in this state, until Nathaniel Foster, the pauper's father, returned and reclaimed his wife; and he, after

his return, resided for several years in this state with his wife, and died here. During all this time the pauper lived with her mother.

Upon the foregoing facts the county court decided, at their December Term, 1856,—POLAND, J., presiding,— that the pauper had a legal settlement in the town of Fayston, and was duly removed. To this decision the town of Fayston excepted.

*Peck & Colby,* for the defendant.

1. The pauper has no settlement in this state. That she has none in her own right is conceded. That her father had none in his own right is also conceded.

During the minority of the pauper's father *he* acquired a settlement in Fayston. Is that communicated to this pauper? The pauper was born in New Hampshire, of parents who were *never* citizens of Vermont, and at the time of her birth owing no *allegiance* to the state of Vermont.

Suppose the same question were to arise relative to a child of this pauper born in another state, and so on of children's children's children to the one hundredth generation, born in every state of the union? Are they all settled in Fayston?

This must follow unless the rule adopted in *Lyndon* v. *Danville* is adhered to.

*J. D. Stoddard* and *S. W. Slade,* for the plaintiff.

The legal settlement of the pauper's grandfather was Fayston, and he never had any other in this state. Nathaniel Foster, the pauper's father, acquired and took the settlement of his father, and he never had any other settlement in this state. Legitimate children follow and have the settlement of their father; and it makes no difference in which of the methods pointed out by the statute for acquiring a settlement the father got his settlement. If his settlement is derivative, it is nevertheless his settlement, and is attended with the same consequences to his children as though he had acquired it by residence, or holding office, or in any other manner pointed out by statute for gaining a settlement; Comp. Stat., chap. 17, sec. 1; *Wells* v. *West Haven,* 5 Vt. 322; Comp. Stat., chap. 18, sec. 17.

The settlement of the pauper's father having once been in the defendant town, it follows as a matter of legal necessity that unless he in some way has forfeited or lost it, that it continued to him and his legitimate children. The construction by the New Hampshire court of their statute, which is just like ours in regard to derivative settlements, would seem to be conclusive of this case; *Landaff* v. *Atkinson*, 8 N. H. 532, and cases there cited.

There is no such question involved in this case as we understand ruled in *Lyndon* v. *Danville*, decided by this court at the last circuit session, and of course that is no authority for this defendant. We infer that the court conceded the doctrine of derivative settlement, as claimed by the plaintiff in that case, otherwise they would have held the contrary doctrine, and determined the case upon that question. That case only decides that an alien, who never, after the birth of his child, comes to this country to reside, cannot communicate to his child, born in a foreign country, a settlement which he once had while he was a citizen of this country.

The opinion of the court was delivered by

REDFIELD, CH. J. The leading question in the present case is whether the pauper can be said to have a derivative settlement from the father, which he also derived from his father, the pauper being born out of the state, and her father at that time, and for many years after, residing out of the state.

It is well settled in this state that a settlement out of the state is not to be taken into the account in determining a settlement in the state.

And the same is true, we think, of a residence out of the state, after the parties have again returned to the state. The settlement may be regarded as suspended during the residence of the pauper, or of the person from whom the settlement is derived, out of the state. And in the case of a residence in a foreign country, it has sometimes been regarded as an expatriation and abandonment of the settlement. But even in that case it has never, to my knowledge, been decided that upon the return of such foreign resident

to this state, his settlement will not revive. For one, certainly, I should be inclined to think it must. Citizenship certainly does revive, by a special act of Congress, not only as to those who are themselves citizens, but as to their children equally, although born during a fixed and, for the time, permanent residence in a foreign country.

And I am not prepared to say, with confidence, that a permanent residence in another of the American states will have any less effect upon a settlement in this state than a permanent residence in a foreign country. Either is, undoubtedly, sufficient to suspend the settlement. And in the present case, had the pauper's father never returned to this state after the birth of the pauper, the case would have been similar to that of *Lyndon* v. *Danville*, decided in this county last year, with the difference between the American states and a foreign country.

But in the present case the pauper's father did return and reside in this state. There could be no doubt then, we think, that he must, after his return into the state, be regarded as having a derivative settlement in Fayston from his father, and that his child, the pauper, will also take that settlement, until she gain one in her own right.

We do not perceive how the question of citizenship, in the several states, is involved here, unless we attempt to discriminate between a residence in one of the other states of the republic and a foreign state or country. And at present I should not, I think, be able to give mere citizenship much effect in determining a legal settlement. But when that distinct question shall arise it may be found to have more bearing upon the question than at present occurs to me. But as it is an important subject, and one confessedly belonging more appropriately to the national tribunals, that is, if it regard a citizenship which is to be respected by other states, I should certainly not feel disposed to discuss it further at present, as in the present case we all agree the pauper was duly removed, and upon grounds not conflicting with the decision in *Lyndon* v. *Danville*.

Judgment affirmed.