THE TOWN OF ALBANY *v.* THE TOWN OF DERBY, *Appellant.*

*Aliens.　Settlement of Paupers.　Costs.*

The offspring of a citizen of this state, born subsequent to April 14, 1802, in a foreign government, to which their father had removed, *animo manendi,* and who return with their father to the United States after they have become of age, are aliens.

An alien born does not have the settlement in this state which his father once had, if before his birth the father removed into the foreign jurisdiction where the child was born, and did not return to this state, until after the child became of age.

Witnesses are entitled to costs for their actual travel from the place of their residence to the place of trial, whether they reside in a foreign jurisdiction or not.

APPEAL from an order of removal of Jane Brooks, a pauper, from the town of Albany to the town of Derby. Plea, that the pauper was unduly removed, because her legal settlement was not in the town of Derby, and trial by jury, at the June term, 1857, —POLAND, J., presiding.

It appeared on trial that Jedediah Richardson, the grandfather of the pauper, removed in the year 1807 from the town of Derby, where he had resided since 1798, and had a legal settlement, into Canada, taking with him his son Elias Richardson, then about fifteen years old. Jedediah Richardson resided in Canada until his death in 1837, and Elias Richardson married there and continued to reside there until 1850. The pauper was the daughter of Elias Richardson, and was born in Canada in 1830, and resided there with her father until 1850, when he removed into Irasburgh, in this state, bringing her with him. He resided in Irasburgh until 1852, and then removed to Albany, where he resided when the order of removal was made. The pauper was married in October, 1850, to one Brooks, who had no legal settlement in this state, and after living with her in several different towns, in none of which did they acquire any settlement, removed into the town of Albany, and shortly afterwards went away leaving her chargeable upon that town, whereupon said order of removal was made.

The court upon these facts decided that the pauper's settlement was in the town of Derby, and directed the jury to return a verdict

that she was duly removed, to which the town of Derby excepted.

Upon the taxation of the plaintiff's costs, the town of Albany claimed to be allowed to tax for the trial of two witnesses who came from their place of residence, in Canada, to the place of trial, for the purpose of testifying ; but the court allowed the plaintiff to tax the travel of such witnesses only from the line of the State to the place of trial, to which decision the plaintiff excepted.

*T. P. Redfield* and *J. H. Prentiss*, for the plaintiff.

*Slade & Edwards*, and *Peck & Colby*, for the defendant.

The opinion of the court was delivered by

ALDIS, J. The grandfather of the pauper acquired a settlement in Derby between 1798 and 1807. In 1807 he removed to Canada, and lived there until his decease in about 1837. When he moved to Canada he took with him his son Elias, who was then about fifteen years old. Elias, the son, had thus a derivative settlement in Derby. From 1807 to 1850, Elias lived in Canada, and during this period he married in Canada. His daughter, the pauper of this case, was born in Canada in 1830, and lived there till 1850, when she removed with her father's family to Vermont. She having acquired no settlement in Vermont, the question arises whether her father's derivative settlement in Derby is transmitted to her.

I. Was she an alien or a citizen?

It is claimed that by the U. S. statutes of 1802 and of 1855, she was a citizen. But as her parents had their permanent domicil in Canada, and she was born there, the decision in *Lyndon v. Danville*, 28 Vt. 809, must be held conclusive upon this point, that she is an alien.

In that case, the parents were originally citizens of the United States, who had removed to Canada, *animo manendi*, and the pauper was born there. The court directly decided, that the pauper was not a citizen by effect of the United States statutes of 1802 and 1855.

II. The pauper being an alien, can she obtain a derivative settlement from the derivative settlement of her father?

The law of settlement of paupers depends entirely upon positive and arbitrary statutory enactments, the judicial construction of them, and the doctrines of the common law as to derivative settlement. It does not seem to stand upon any principle of equity, but is purely artificial and arbitrary. It is desirable, therefore, that the harmony of judicial decisions should, as far as possible, be preserved in a matter thus resting wholly upon precedent. Adjudged cases and established principles, and their fair analogies, ought not to be disturbed; for, in such cases, it is not so important, perhaps, what the law is, as that it should be settled and known.

In *Londonderry* v. *Andover*, 28 Vt. 416, the question as to the alien's so deriving a settlement, did not distinctly arise, as the pauper's father had resided in a sister state. The court, however, while recognizing the doctrine that a pauper born in a sister state, may on coming to this, be remitted to his derivative settlement, intimates that "a different rule would probably apply to children born in a foreign country, of parents domiciled there, though the father may have had a settlement in this state, when the father during their minority never returned to this state."

In *Lyndon* v. *Danville*, 28 Vt. 814, the court decided that an alien born, having a parent who had a settlement in this state, cannot upon coming into this state, be remitted to the settlement of the father, the father not having returned to this state before his decease. This decision is put distinctly upon the ground that aliens do not acquire by derivation the same rights of settlement as native citizens, and that a residence in a foreign government destroys or suspends that right of derivative settlement, which ͺexists when the residence is only in another of the American states. It is perhaps not very clear ͺupon what principle the doctrine of allegiance is held to control the law of settlement ;—or of what importance it is to a town where aͺperson, having a settlement in it, goes when he leaves the town. But the case of *Lyndon* v. *Danville* seems to have established a distinction between aliens and citizens, as to the law of settlement. By that decision we feel bound.

The only distinction between that case and this is, that there the father never returned to this state ;—here he has, but not during the minority of his daughter. By our laws, when she and her father came here, she was of age. The case of *Lyndon* v. *Dan-*

Albany v. Derby.

*ville* seems to recognize that if the father return to this State, his settlement revives and attaches to his *minor* children, impliedly affirming that it would not attach to those not minors.

Adopting the principle of that case and applying it to this, we think the pauper here cannot be held to derive a settlement from her father, and was therefore unduly removed. If the law of derivative settlement cannot be limited as *to time*, but shall be held to extend indefinitely, and perhaps to apply to successive generations of the person having such settlement when removing to a sister state, (as the language of some of the cases would seem to imply, but of which Chief J. Redfield expresses doubt in *Lyndon* v. *Danville*)—it may be well at least to limit the extent of its application as to territory, and to confine it within the area of the United States. The opportunities and the uncertainties of litigation as to this law of settlement are sufficiently numerous ; and it would seem desirable to diminish rather than to extend them by judicial construction.

It has been urged with much ability and ingenuity that to preclude aliens from acquiring a derivative settlement from their fathers, conflicts with the humanity and charity of the statutes for the relief of the poor. But we cannot so regard it. The alien pauper is admitted to all the benefit of our laws for the relief of the poor equally with the native citizen. If he is not sent to the place where his father had a settlement, he is practically settled in whatever town he may happen to be—having thus perhaps an advantage over the native citizen in that he may choose his poor house or place of support.

III. A question of some practical importance, as to the taxation of witness fees, has arisen in this case. The witnesses lived in Canada, and taxed fees for their travel from their place of abode, in Canada, to the place of trial. The court allowed them to tax for travel only from the line of the State to the place of trial.

The practice has not been uniform in the different counties of the state, but the general custom has been to tax for actual travel from the place of abode to the place of trial, where the witness has actually travelled that distance for the sake of attending the court. Such seems the fair construction of the statute. *Parties* are limited to travel within this state; but there is no such limitation in

47

---

Derby *v.* Salem.

---

the act as to the travel of witnesses, and the absence of such limitation was doubtless intentional, as it would seem to be reasonable. The language of the former statutes of the state confirm this view. (See Tolman's Compilation, vol. 1, p. 90.)

The practice may be subject to abuse. But the court having a supervisory power over the taxation of costs, would doubtless guard against abuses by restraining it to actual and necessary travel for the purpose of attending court as a witness, and not to cover other objects or expenses.

The judgment of the county court is reversed.