THE TOWN OF WESTFORD *v.* THE TOWN OF ESSEX, APPELLANT.

*Exceptions. Pauper.*

A bill of exceptions is not governed by the strict rule applicable to pleadings, that no intendment is made in favor of the party who thus sets up his rights, but it is to be understood, in the usual and ordinary sense of language, as a plain statement of the facts for both parties, to which the court is to apply the law.

If one, having a legal settlement in Vermont, remove to another of the United States, and never return·here, his children, born there, take the settlement of their father upon coming into this State.

APPEAL from an order of removal of Harmon Brown, a pauper, from the town of Westford to the town of Essex. Plea, that at the time of making the order, the pauper had not come to reside in Westford, and that his settlement was not in Essex. The case was tried by the court, at the March Term, 1858,—BENNETT, J., presiding.

It appeared on trial that at the time the order of removal was made, the pauper had come to reside and did reside in Westford, and had become chargeable upon that town.

The pauper was the grandson of Samuel Brown, who, having obtained a legal settlement in the town of Jericho, in this State, prior to 1804, removed from there in that year to Connecticut, where he resided until his death, in 1850.

Both the pauper and his father, Edmund Brown, were born in Connecticut, and neither of them ever acquired a settlement· in his own right, in any town in this State.

It also appeared that the father of the pauper, with his wife and family, moved into this State, and resided in different towns in Vermont for about eight years before the order of removal, at which time he was residing in Burlington. The pauper was a minor when the order of removal was made.

The settlement of the pauper's mother, who was living at the time of trial, was in Essex when she married his father.

The county court adjudged that the pauper was unduly removed, and rendered judgment for the defendant, to which the plaintiff excepted.

*E. R. Hard* and *J. French,* for the plaintiff.

The pauper having no settlement in his own right, and the settlement of his mother, at the time of her marriage, being in Essex, he was properly removed there, unless his father had at the time, a settlement in some other town.

That Edmund Brown, the father, had no settlement in any town in his own right, is expressly stated in the exceptions, but the defendant claims that he derived one in Jericho, from his father, Samuel Brown. This is denied.

1. Only *legitimate* children have the settlement of their father.

In a case of this kind, the law, in the absence of all testimony upon the subject, presumes neither legitimacy nor illegitimacy, but the character of the child in this respect must be shown by testimony by the party claiming the benefit of it. And as no testimony whatever was introduced by the town of Essex tending to show that Edmund Brown was the lawful issue of Samuel Brown, or that Samuel Brown was even ever married, the county court was not justified in finding the legitimacy of Edmund Brown.

2. Samuel Brown removed from this State before the birth of Edmund, and never returned.

This we insist, *suspended* his *settlement* in Jericho, so that neither the pauper nor Edmund Brown took any settlement in that town by derivation; *Londonderry* v. *Andover,* 28 Vt. 417; *Lyndon* v. *Danville, id.* 809; *Waterford* v. *Fayston,* 29 Vt. 530.

*Charles Russell* and *Frederick G. Hill,* for the defendant.

The settlement of Samuel Brown, the grandfather of the pauper, in Jericho, was not lost by his removal to Connecticut; and Edmund Brown, his son, and the father of the pauper, upon coming into this State took the settlement of Samuel Brown, and communicated it to his son, the pauper; *Wells* v. *Westhaven,* 5 Vt. 322; *Adamson* v. *Barbour,* 28 Eng. Law & Eq. 38; *Londonderry* v. *Andover,* 28 Vt. 416; *Fretown* v. *Taunton,* 16 Mass. 52; *Landaff* v. *Atkinson,* 8 N. H. 534; *Hanover* v. *Weare,* 2 N. H. 131; *Georgia* v. *Grand Isle,* 1 Vt. 464; *Townsend* v. *Billerica,* 10 Mass. 411; *Canton* v. *Bentley,* 11 Mass. 441; *Lyndon* v. *Danville,* 28 Vt. 809.

POLAND, J. The only question arising upon the facts found

by the county court, is whether the father of the pauper had a settlement in the town of Jericho, by derivation from his father, Samuel Brown.

If the father of the pauper had such derivative settlement, then that was the settlement of the pauper, for the case finds that neither the pauper nor his father ever acquired any settlement in their own right in the State. If the father of the pauper had not a settlement, then by another provision of the statute, the pauper took the maiden settlement of his mother in Essex. Samuel Brown, the pauper's grandfather, had a settlement in Jericho, but before the birth of the pauper's father, he removed to the State of Connecticut, where he continued to reside till his death. Both the pauper's father, and the pauper himself, were born in Connecticut, but afterwards, during the minority of the pauper, removed into this State.

The counsel for the defendants make a question in the outset, that it is not stated in the exceptions that the pauper's father was the *legitimate son* of Samuel Brown, which they say was necessary, at all events, in order for him to take his settlement. This is doubtless true as a legal proposition, but the question is rather one of construction upon the bill of exceptions, than one of law. The exceptions do not say, in terms, that the pauper's father was the son of Samuel Brown, but that the pauper was the grandson of Samuel Brown, and then go on to state the place of his birth, residence, etc. If the defendants had made any question of that sort in the county court, it would undoubtedly have been incumbent on the plaintiffs to give some evidence to satisfy the jury that the relation between the father and grandfather of the pauper was legitimate, though strict proof of a marriage is never required in establishing these relationships in pauper cases.

But no question of this sort appearing to have been made, nor any such proof having been required in the county court; what is the fair and reasonable inference to be drawn from this statement of the relationship in the exceptions? Exceptions are not to stand upon the footing of pleadings, where no intendment is to be made in favor of the party thus setting up his right, but are to be understood in the usual and ordinary sense of common communication, a

plain statement of the facts for both parties for the court to apply and declare the law arising upon them. Hence, when this relationship is thus stated, it is to be understood as the usual and common relation of that character, which is *legitimate*, and not the rare and exceptional one of illegitimacy. This same question was raised in *Landaff* v: *Atkinson*, 8 N. H. 532, and received the same determination.

But the important question presented is this : A man having a legal settlement in this State, removes into another State, where he has children born, who afterwards come into this State to reside. Do such children take the settlement of their father in this State, though the father never returns within the State?

Our statute provides that legitimate children shall follow and have the settlement of their father, etc., but does not contain any provision as to whether this shall apply to children born in the State, or to children born without the State, of parents who may have a settlement in the State. I do not find that any question was distinctly brought before the courts of the State, whether this provision extended to children born out of the State of parents who had a settlement here and had removed, until the case of *Lyndon* v. *Danville*, 28 Vt. 809.

In that case the father of the pauper had a settlement in Danville, but removed into Canada, and resided permanently there till his death. The pauper was born in Canada, but came into this State, and the question was whether he took his father's settlement in Danville. The case was tried before me in the county court, and as the words of the statute were general and unrestricted, I thought it should properly apply to all children of parents having a settlement in this State, wherever they might be born. The case was taken before the supreme court on exceptions, and twice argued, when the judgment was reversed, but the court were not unanimous in the decision. Ch. J. REDFIELD sustained the view taken by the county court, while Judges ISHAM and BENNETT held that the pauper's father having removed out of this government, and become permanently domiciled in a foreign country, his children born there were in a legal sense aliens, and that for that reason they could not derive any settlement from their father. Judge BENNETT, in his opinion, strongly inti-

mates that the father himself, if he had returned into the State, would not have regained his former settlement. Neither of the judges who made the decision in that case, suggest that the subsequent removal of the father into the State would have given any settlement to the son, and indeed, the grounds of their decision preclude the idea that the father's return would make any difference.* After the case of *Lyndon* v. *Danville* had been once argued, and before it was decided, the case of *Londonderry* v. *Andover*, 28 Vt. 416, came before the court and was decided. In that case the pauper was born in New Hampshire, while the father resided there, but the father had a prior settlement in this State, and during the pauper's minority returned into Vermont. It was held the pauper took the settlement of the father. Judge ISHAM, in delivering the opinion, says "that a derivative settlement can be communicated by a father having such a settlement to his minor children though born in another State, if the father during their minority remove with them into this State," and in support of this he cites *Townsend* v. *Billerica*, 10 Mass. 411; *Canton* v. *Bentley*, 11 Mass. 441; and *Cambridge* v. *Lexington*, 1 Pick. 509. All these cases do support the general proposition that children born in another State, upon coming into the State of Massachusetts, take the settlement of the father, if he had one in that State, but in neither of the cases is it hinted even, that such result depends upon the return of the father into that State during the minority of the child, or even at any time whatever.

In the first of the cases thus cited it appears affiirmatively, that the father never did return into the State, and in both the others there is nothing said of any return of the father. I think it quite probable that this opinion was affected to some extent, by the fact that the case of *Lyndon* v. *Danville* was then before the court, and by the division existing among the members of the court upon the question there involved.

The next year the case of *Waterford* v. *Fayston*, 29 Vt. 530, came up. In that case the father of the pauper had a settlement in this State, but removed into the State of New Hampshire,

* NOTE.— In *Lyndon* v. *Danville*, ISHAM, J., in his opinion, intimates that if the father should return into this State, his former settlement would revive, and would be transmitted to his *minor* children residing with him. See 28 Vt. 814. REPORTER.

where he married, and where the pauper was born. The father then abandoned his wife and child, who returned into this State. Many years after the father returned into this State. The case, as reported, does not say whether it was during the minority of the pauper, but my recollection is, from having tried the case in the county court, that it was not.

It was held in that case, that the pauper took a derivative settlement from her father in this State.

The opinion was pronounced by the Chief Justice, but it is very evident that he was not prepared to acquiesce in the ground upon which *Lyndon* v. *Danville* had been decided by the other members of the court, and instead of distinguishing the cases upon the ground that the pauper in the one case was born in one of the States of the Union, and in the other in a foreign country, and therefore an alien, he repudiated that distinction, and thought the cases should stand alike in that respect. But he put the case upon the ground, that where the father removed from the State, whether to another State or a foreign country, his settlement was suspended thereby and would not revive, or be communicated to his children, unless he should subsequently return into the State, and that if he did return into the State, it would have the same effect in both cases.

The same year of this decision arose the case of *Albany* v. *Derby*, in Orleans County. In that case the pauper's father had a settlement in this State, and removed into Canada, where he married, and where the pauper was born, and subsequently both the father and the pauper came into this State to reside. This case was also tried before me in the county court, and relying upon the opinion of the Chief Justice in *Waterford* v. *Fayston*, and perhaps with some lingering attachment to my own original opinion in *Lyndon* v. *Danville*, it was decided in the county court that the pauper took the settlement of her father in this State.

This case was taken to the supreme court and decided on the last circuit.* The judgment of the county court was reversed, and it was decided upon the authority of *Lyndon* v. *Danville*, that the pauper being an alien born, could derive no settlement from her father in this State, and that the case was not altered by the

* See 30 Vt. 718.

fact that her father had returned into the State. This was held, not so much upon the ground of the inherent soundness of that decision, as that upon a branch of the law so purely artificial and arbitrary as the settlement of paupers, stability and uniformity of decision were more to be desired than anything else.

Taken in connection with the decision and the opinions of the judges in *Lyndon* v. *Danville*, it is quite manifest that the peculiar grounds on which the judgment in *Waterford* v. *Fayston* was placed by the Chief Justice, were not the views of a majority of the court as then constituted, though the decision itself was fully concurred in by all. The case of *Albany* v. *Derby* seems also to have wholly negated the idea, that the derivative settlement of the child here depends wholly upon the return of the father into the State.

I do not find that the doctrine of a suspension of the settlement so that it could not be communicated to the child until the return of the father into the State, was ever sanctioned by any judicial decision, or ever advanced from the bench in any case, till stated in *Londonderry* v. *Andover* by Judge ISHAM, and more distinctly laid down by the Chief Justice in *Fayston* v. *Waterford*. What is said in both of those cases on that subject was not necessary to the decision of those cases, and we think is not to be regarded as the basis of the judgment of the court, and both cases were undoubtedly correctly decided. This notion of suspension is wholly in conflict with the cases cited above from Massachusetts, and several other cases in that State.

In the case of *Landaff* v. *Atkinson*, 8 N. H. 532, above cited, the very point of such a suspension was made, and the remarks of UPHAM, J., who gave the judgment of the court in that case, are so appropriate that I quote them at length. "A farther objection taken is, that while the father was without the State his residence was suspended, so that during such period he could not communicate a settlement to his children. Were the settlement suspended it would perhaps be attended with this effect; but we do not conceive the settlement to be suspended. The individual is placed merely under such circumstances that he and his children born to him without the State, can not enforce a claim for support while absent. The fact of their settlement is in no

31

way altered by their absence, or any consequences arising from it, except the want of means to enforce their claim. The right exists, not as a question of jurisdiction, but is a mere fact of descent, and avails to the pauper and his children on their return to the State, precisely as though they had never left it."

We fully concur in the views of the New Hampshire court in that case.

We think it may now be regarded as fully settled, that children born in other States, of parents who have a settlement in this State, on coming into this State take such settlement themselves by derivation, whether the parent whose settlement they thus take ever returns into the State or not. And that it is also now settled in this State, that a child born in any foreign State, of a parent who has removed from this State, and becomes permanently domiciled in such foreign State, having a settlement in this State at the time of removal, will not, on coming into this State, take the settlement of such parent, even if the parent also returns.[*]

The decision below, being in accordance with what we deem the correct rule of law upon the facts, is affirmed.