THE TOWN OF ELMORE v. THE TOWN OF CALAIS.

*Pauper. Alien.*

An alien born takes no right to a settlement by derivation, whether he comes to this country during or subsequent to his minority, and whether his parents return with him or not.

APPEAL from the removal of a certain pauper from Elmore to Calais. The facts in the case are stated sufficiently in the opinion of the court. The county court at the May Term, 1859, in Lamoille county,— POLAND, J., presiding,— decided that the paupers were duly removed, to which the defendant excepted.

*O. H. Smith,* for the defendants.

*Thomas Gleed,* for the plaintiffs.

ALDIS, J.   The paupers removed to Calais, have a settlement there, unless the facts agreed upon by the parties show that they have a derivative settlement through Sampson Moore in Elmore ; and this depends upon whether Sampson Moore had a derivative settlement from his mother.   It is admitted that the mother of Sampson Moore had a settlement in Elmore.   Her husband, James Moore, had no settlement in this State, so she and her son, Sampson, took none from him, and upon his death her settlement in Elmore revives.   The question is, do the residence of James Moore in Canada, up to the time of his death, and the birth of Sampson Moore in Canada, and his residence there till his father's death, make Sampson Moore an alien born, and cut off his derivative settlement from his mother, although during his minority he returned with his mother to Vermont.

James Moore went to Canada with his family in April, 1819, lived there till December, 1822, (a period of three years and eight months,) and died.   During that time Sampson Moore was born in Canada.   There is nothing to indicate that James Moore had not taken up a permanent residence in Canada ; on the contrary, his residence for that length of time shows that it was not a temporary sojourn, but a permanent domicil.   The fact that he

refused to take the oath of allegiance there by no means shows that Canada was not his fixed and permanent residence. Very many Americans go to Canada to reside who do not take the oath of allegiance. They very frequently cherish an expectation that they may at some time return to live in the States; but this does not furnish the test of domicil. We think, therefore, that in absence of proof to show a contrary intent, the residence of James Moore in Canada for three years and eight months, and up to the time of his death, does establish the intention of remaining there and making that his domicil. His son (Sampson) must, therefore, be held, according to the decision in *Lyndon* v. *Danville*, 28 Vt. 809, to have been born an alien.

Does the return of the mother with the child during its minority, to Vermont, give the child the settlement of its mother by derivation? This point has never before been directly before the court for decision, though it has several times been alluded to.

In *Lyndon* v. *Danville*, Judge ISHAM, referring to the father of the pauper and his permanent residence in Canada, says, "It may be true that if at any subsequent time he had removed to this State, his settlement would have continued in Danville, as his relation to the State would have revived and existed the same as if no removal had been made. In that event his settlement might have been transmitted to his minor children residing with him."

This suggestion, however, is but hypothetical, the decision of that case turning entirely on another point.

In the recent case of *Westford* v. *Essex*, 31 Vt. 459, the question whether the return to the State of the parent through whom settlement is derived, is necessary in order that the children may have his settlement, is very fully considered, and the authorities critically examined.

The court held that the child, though born out of the State, on coming into it took the settlement of the parent, though the parent never returned to the State. The right to derive a settlement from the parent does not depend at all upon the parent's return to, or continued absence from, the State. This point we must regard as settled, and the critical and elaborate examination of the authorities made by the learned judge who delivered the opinion of the court renders any review of them unnecessary.

The return of the parent, then, does not revive or restore a suspended settlement. If the settlement exist, the return of the person who has the right to it brings the settlement back with him. If the settlement do not exist when abroad, the return of the child or of the parent cannot reanimate it. As we have held that an alien born does not, on return to the State when of full age, take the settlement of the parent, because he is an alien, distinguishing between our sister States and foreign governments, and making alienage or citizenship the test of settlement by derivation, it would seem that consistency requires that we should apply the same rule to adults and minors. The return of the parent with the child does not help or hurt the right of derivation. There seems to be no good reason why the alien born minor should have the right, when the adult does not. That distinction is not regarded in the case of children born in the other States of the Union and coming here. They take settlement by derivation, whether they come as minors or as adults, and whether their parents do or do not return.

But the alien born stands on different ground. His right to derivative settlement from his parent is cut off by his being an alien, and is not restored by his return during his minority.

This was the view suggested in the opinion of the court in *Westford* v. *Essex*, though it was not the point there decided.

In this view we all concur.

Judgment affirmed.