EDGERTON, ROGERS AND HATCH *v.* MARTIN AND HEFLIN, AND TRUSTEE, L. E. PELTON.

*Trustee Process.    Marshalling of Securities.*

The trustee, having become liable for the defendants as receiptor, received from them a list of accounts and notes with a written agreement that they were turned out to him as security for liabilities assumed, or afterwards to be assumed, by him for them. Afterwards the trustee purchased property of the defendants and executed his notes to them therefor, with a verbal agreement that these notes should remain in his hands *as security for all* liabilities which he had contracted for them. While matters stood in this condition the plaintiffs brought the present trustee process. Afterwards the trustee assumed new liabilities for the defendants and took a written agreement from them, pledging as security therefor both the notes and accounts previously turned out to him, and also his own notes above described. The trustee afterwards made collections upon the demands so turned out to him. *Held,* that by their attachment the plaintiffs gained the right that the goods, effects and credits of the defendants then in the trustee's hands, as well as all collections which he should afterwards make on the demands turned out to him, should be applied on his liabilities for them, in accordance with the contract between them existing at the time the process was served; and that the trustee and defendants could make no new agreement in respect to such demands which could interfere with the lien which the plaintiffs acquired thereon by their attachment; *and that therefore all collections* made by the trustee, up to the time of disclosure, upon the demands so turned out to him before the service of the trustee process, should be applied solely upon liabilities incurred by him for the defendants before the trustee process was served.

*Held,* also, that the case was a proper one for the application of the principle *of equity that where one creditor has a lien upon two funds,* and another creditor has a lien upon but one of the funds, the former will be compelled to resort for satisfaction, *in the first instance, to the fund upon which he* alone has a lien, if that course is necessary for the satisfaction of the claims of both parties.

TRUSTEE PROCESS.  The facts in the case and the judgment of the court below are sufficiently stated in the opinion of the court.

The trustee, *pro se.*

*White & Sowles,* for the plaintiffs.

KELLOGG, J.   The questions in this case arise on exceptions taken by the trustee to the judgment of the county court,

adjudging him chargeable as the trustee of the principal defen-
dants on the facts reported by the commissioner.

It appears from the commissioner's report that the trustee,
prior to the April Term of the Franklin county court in 1860,
became the receiptor of property attached in two suits against
the principal defendants, which were returnable to and entered
in the county court at that term, and on which final judgments
were subsequently rendered against the principal defendants.
About the time when the trustee signed the receipts referred to,
the principal defendants drew off a list of accounts due to them
on their ledger, and of some notes also due to them, upon a little
book, and annexed to this list of accounts and notes an agree-
ment in writing, by them signed, in which it was expressed,
*inter alia*, that these accounts and notes were thereby " turned
out" to the trustee " to secure him for such liabilities as he has
assumed or may hereafter assume for us," and that the trustee
should be allowed to collect the same, so far as it might be
necessary for his proper indemnification against such liabilities.
This little book was then delivered by the principal defendants
to the trustee. On the 25th April, 1860, the trustee purchased
of the principal defendants the entire stock of goods in their
store, with the store furniture, for the sum of two thousand
dollars, and executed to them four promissory notes, each for
the sum of five hundred dollars, payable severally in three, six,
nine, and twelve months from that date with interest ; and there
was, at the same time, a verbal agreement between him and
them that these four notes should be a security in his hands for
all indebtedness then existing in his favor against them, and for
all liabilities which he had contracted for them, and for all pay-
ments which he might make for them. The writ in this suit
was served on the trustee on the 18th June, 1860. After the
execution of the four notes, and prior to the service of the writ
on the trustee, he became liable on account of the principal
defendants by signing notes as surety for them to a considerable
amount, and he also advanced money to them. On the 30th
June, 1860, he signed another note as surety for them, and took
from them a receipt for all of the notes so signed by him as
surety for them as aforesaid, which, after reciting his liabilities

for them as receiptor and surety, contains an agreement on their part that the trustee is to hold " all notes and claims now and heretofore placed in his hands, to receive the same and to collect and apply the same as soon as he can reasonably do so, and all collections are to apply on liabilities first assumed and first to become due ; and he is also to apply the four notes given by him for goods to us for five hundred dollars each in payment of said liabilities, but to account to us for the balance only after said liabilities are taken up and cancelled." On the 6th July, 1860, the trustee signed several other notes to various parties, as surety for the principal defendants, and took from them a receipt for the same, which, after describing the notes, proceeds as follows, viz.: " for the security of which, we have this day placed in his " (the trustee's) " hands accounts and claims for collection to pay said notes ; and he is also hereby authorized to hold the balance of his notes given for goods, not applied on other liabilities heretofore assumed, to secure the due payment of these notes above stated." On the 3rd October, 1860, the trustee received from the principal defendants several notes against other persons, for which he executed to the principal defendants a receipt " to account for the same by paying the amount, when collected, on liabilities I heretofore assumed for them as surety ;" and, on the same day, the principal defendants placed in the hands of the trustee a list of accounts for collection, to be paid by the trustee, when collected, upon the liabilities previously to that time entered into by him as surety for them,— these notes and accounts so received by him from them at this time being the same debts or demands specified and referred to in the little book before mentioned, and also in the receipt and agreement of the principal defendants, dated 30th June, 1860, as above stated. Until this time, October 3rd, 1860, the trustee did not have the custody of any of the notes or accounts on the little book, and made no collections upon them, but after receiving them on this occasion he made considerable collections on the same ; and the proper application of the sums so received and collected by him is the principal question which arises on the exceptions taken in this case.

The trustee, up to the time of making his disclosure, had paid out upon liabilities assumed by him for the principal debtors, the sum of      $2,157.96

He had also paid out a large sum of money upon liabilities incurred by him for the principal debtors after the service of the trustee process, the amount of which is not material. He had collected up to the time of the disclosure upon the notes and accounts drawn off in the little book above mentioned, the sum of      673.95

     1484.01

The notes given by the trustee for the store of goods amounted at the time of the disclosure to      2,147.32

The commissioner decided that the collections made by the trustee upon the notes and accounts assigned him, amounting to $673.95, should be applied solely upon the payments made by him upon liabilities assumed *prior* to the service of the trustee process; and he deducted the balance from the amount due on the trustee's notes, leaving a remainder of      663.31

For which he decided the trustee was chargeable.

The county court accepted the commissioner's report, and adjudged the trustee chargeable for the amount of the plaintiffs' damages and costs, being less than the amount for which the commissioner reported the trustee was chargeable. To this decision the trustee excepted.

The plaintiffs, by the service of their writ in this suit on the trustee, on the 18th June, 1860, attached the goods, effects, or credits of the principal defendants intrusted or deposited in his hands or possession at that time, or which might thereafter come into his hands or possession before the making of his disclosure; and, by such attachment, such goods, effects, and credits were held to respond the final judgment in the suit. (Comp. Stat., p. 256, §2.) The object of the remedy by trustee process is to enable the creditor to enforce against the trustee, in respect to the goods, effects, or credits thereby attached, all the rights

which the principal defendant could himself enforce at the time of the attachment; and when the trustee has in his possession goods, effects, or credits of the principal defendant, which he holds by a conveyance or title that is void as to the creditors of such defendant, he may be adjudged a trustee on account of the same, although the principal defendant could not have maintained an action therefor against him. (Comp. Stat., p. 262, § 46.) At the time of the service of the trustee process in this case, the trustee was indebted to the principal defendants on his four promissory notes which were executed by him to them for the goods and store furniture in their store on the 25th April, 1860, as already mentioned. This indebtedness was absolute, and, as between him and the principal defendants, was subject only to the verbal agreement made between him and them, at the time when these notes were executed, that the notes should be a security in his hands for all indebtedness then existing in his favor against them, and for all liabilities which he had then contracted for them, and for all payments which he might make for them. In the absence of any such agreement, it would seem that the provisions of the statute, (Comp. Stat. p. 263, § 51,) allowing the trustee to retain or deduct, out of the goods, effects, and credits, in his hands, all his demands founded on contract, express or implied, against the principal defendant, and declaring that he should be liable for the balance only, after all such demands between him and the principal defendant are adjusted, would have protected him to the same extent. The rights of the plaintiffs to the goods, effects, and credits of the principal defendants in the hands or possession of the trustee became fixed and certain by the service of the trustee process upon him; and the principal defendants and the trustee could not afterwards make any agreement in respect to the goods, effects, or credits in the hands of the trustee which would have the effect to subvert or interfere with the lien which the plaintiffs acquired thereon by their attachment. It is true that the trustee could not be held chargeable on account of having notes or securities for money belonging to the principal defendants in his hands, unless it appeared that the money due upon the same was collected or received by him subsequent to the service of the trustee process

upon him and before the making of his disclosure; but, at the time of the service of the trustee process on the trustee in this case, he had no such notes or securities for money in his hands. He did, however, at that time have in his hands a list of notes and accounts belonging to the principal defendants, contained in the little book before mentioned, which were "turned out" to him before the April Term, 1860, "to secure him for such liabilities as he had assumed or might thereafter assume" for the principal defendants, and this was the only agreement in respect to the notes and accounts so "turned out" to the trustee which was made between him and the princpal defendants before the service of the plaintiffs' writ upon him. The trustee now claims that as the principal defendants did not put these notes and accounts into his hands and control until the 3rd October following, they could then make a new and different agreement with him in respect to the application of the collections which might be made on those claims, and that, in fact, they did make such an agreement, at the last mentioned date, under which he was authorized to apply all such collections by way of securing his liabilities incurred for them after the service of the trustee process. The contract between the principal defendants and the trustee which was made prior to the April Term, 1860, was the only contract which was made or was in force when the attachment by the trustee process was made, and the trustee could, at any time, have made it operative against the principal defendants according to its terms; and, when he received the notes and accounts on the 3rd October, 1860, which were embraced and referred to therein, he still held this contract in his hands, and had never released or surrendered it. At the time of the service of the trustee process, he had two means of indemnity to rely upon for his security against the liabilities which he had then incurred on account of the principal defendants; one being his cwn notes against them, and the other being the contract in respect to their notes and accounts. After the lien upon his notes which the plaintiffs acquired by their attachment supervened, it was not in the power of the trustee and the principal defendants, by any agreement between themselves, to change, or vary their existing obligations so as to lessen or subvert the legal

or equitable rights acquired by the plaintiffs by their attachment. If it was allowable for the trustee and the principal defendants, by an arrangement between themselves after the rights of the plaintiffs under their attachment had supervened, so to adjust the burden of the indemnity to which the trustee was entitled as to cast it wholly upon the fund attached, it is very plain that the rights acquired by the plaintiffs under their attachment would be dependent upon the pleasure of the trustee and the principal defendants, and not upon his existing obligations to the principal defendants. The rights acquired by the plaintiffs under their attachment should not be controlled or subverted in this way, and we consider that they had not only an equitable but also a legal right to insist that the collections made by the trustee should be applied according to the agreement in force at the time of the service of their writ. The money collected by the trustee should therefore be applied in satisfaction of the liabilities incurred by him before the service of the trustee process.

No injustice is done to the trustee in respect to his security by this application, because he incurred his additional liabilities for the principal defendants with a full knowledge of the plaintiffs' attachment and lien. The general principles of equity law in respect to the marshalling of securities (1 Story Eq. Jurisp., by Redfield, §§ 633, 645,) may well be applied in this case to the extent of the money collected by the trustee. For his liabilities for the principal defendants assumed prior to the commencement of this suit, he had a lien on, or interest in, two means of indemnity, viz.: on his own notes which he had executed to them, and on the money collected on demands belonging to them, which, by their agreement, were "turned out" to him for the express purpose of securing these liabilities. The plaintiffs by their attachment acquired an interest in or lien upon only one of these funds.

We are satisfied that the commissioner made the appropriate application of the money collected and received by the trustee on the demands belonging to the principal defendants in his hands, and that the trustee was properly held chargeable for the amount of his notes to the principal defendants, deducting

Edgerton et als. *v.* Martin et al. and Trustee.

therefrom the balance of his payments (after making the application above mentioned) for or on account of liabilities assumed by him for them before the time of the service of the plaintiffs' writ upon him in this suit.

The judgment of the county conrt, by which the trustee was held chargeable upon the commissioner's report, is consequently affirmed with costs. The judgment against the principal defendants, not being excepted to, is affirmed without costs.