## STEVENS v. JOYAL.*

### *Practice.   Evidence.   Competency of Witness.*

The objection that an appellant has not sufficient interest in the subject-matter of the controversy to entitle him to appeal from the Probate Court, must be made in County Court before issue joined and trial begun, otherwise it will be too late.

The question was whether defendant was the widow of J. Plaintiff claimed she was not, because she had a husband living at the time of her alleged marriage with J. To support this claim, plaintiff introduced evidence without objection, tending to show that after said alleged marriage, J. introduced a man to B., his brother-in-law, at R., as defendant's husband; and offered to show that J. afterwards told his sister that defendant's husband had been at R., and if she did not believe it, to ask B. *Held,* that said evidence was not admissible.

*Held,* also, that evidence that J's parents said that defendant left J. a long time before his death, and did not afterwards live with him, was inadmissible.

*Held,* also, on appeal from a decree of the Probate Court giving defendant all the estate of J. as his widow, that she was a competent witness to the fact of her marriage with J.

APPEAL from a decree of the Probate Court, decreeing the entire estate of Joseph E. Joyal to the appellee, who claimed said estate upon the ground that she was his lawful widow. Plea, general issue, trial by jury and verdict for appellee, April Term, 1874, ROYCE, J. presiding.

By her maiden name of Margaret Pulson, the appellee was lawfully married to one George Edwards, at Highgate, Vermont, on the 11th of August, 1842. She was offered as a witness on her own behalf. The appellant objected to her competency as a witness ; but the court overruled the objection ; to which the appellant excepted. The appellee testified, among other things, that said Edwards died at Bedford, in the State of Michigan, some time in

*Heard at the January Term, 1875; decided at the January Term, 1876.

October, 1854, and that she was married to said Joyal on the 27th of October, 1855 ; that Edwards, her husband, left home in the State of New York, in May, 1854, and went West; and that she received three letters, dated respectively May 27th, June 29th, and July 11th, 1854, (dated and postmarked Chicago), that her husband wrote to her ; and that some papers that her husband took with him when he left home, she received by express, a few months subsequent to October, 1854, with two daguerreotypes of him, one of which he carried away with him when he left home.   To the admission of the three letters and the daguerreotypes, the appellant objected ; but the court  overruled the objecttion, and admitted them ; to which the appellant excepted.

The appellee also testified that she received letters from strangers, dated and postmarked at Bedford, informing her that one George Edwards was dead.   These letters were not admitted by the court, and were not read to the jury ; but the counsel for the appellee, under objection by the appellant, were permitted to urge in argument the fact of their receipt by the appellee, their dates and postmarks, as tending to prove that the said Edwards died in October, 1854 ; to which the appellant excepted.   There was no proof of the marriage of the appellee to Joyal, except her own testimony.   No record proof of her marriage to Joyal was offered, and no proof that search had been made for such record proof ; and the appellant excepted to the admission of parol proof of said alleged marriage, upon that ground also.

The appellee introduced the depositions of two witnesses who lived in Bedford, Michigan, who testified that a man by the name of George Edwards died at that place in October, 1854.

The appellant offered a witness, one Uriel Bundy, who married a sister of said Joyal, to show that one day in January, 1862, when the witness, who belonged to the 7th Reg. Vt. Volunteers, was stationed at Rutland, the said Joyal, who was a member of the same regiment and company, came to Bundy's tent in company with a stranger to Bundy, and introduced him to Bundy as George Edwards ; that the usual salutations passed between Bundy and the man, and that presently Bundy, who had heard reports that Joyal was living with a woman who had a husband

living, in the presence of Joyal, asked if this man was Margaret's Edwards; on being told he was, the witness expressed his surprise that two men occupying such a position towards each other should be together and on such familiar terms ; and that the man said he had lived with her as long as he wanted to, and had all he wanted to do with her, and that Joyal was welcome to all the satisfaction he could derive from living with her. Joyal took part in the conversation, and both he and the man admitted that the man was the husband of the said Margaret, the appellee. The foregoing testimony was admitted ; and the appellant offered Malinda Bundy, wife of said Uriel, and sister of said Joyal, to show that some weeks after the interview in Rutland, Joyal was home on a furlough, .and told his sister about the interview at Rutland, and that George. Edwards had been there, and that if she did not believe him, to ask Bundy when he came home. No attempt was made to show what Bundy said to his wife when he came home. The court excluded the above testimony ; to which the appellant excepted.

The appellant also offered to show by said Malinda, that a year or so before this, Joyal told her that he had positively found out that Edwards was living ; and that Joyal on that occasion showed her a letter of recent date, that he said was written by Edwards, in confirmation of his statement that Edwards was living at that time ; also, that Joyal told his sister at that time, that he never was married to Margeret, but that she lived with him as a housekeeper. To the admission of this testimony, the appellee objected, and the court excluded it ; to which the appellant excepted.

· The appellant, to show that he had such an interest in the subject-matter as gave him the right to appeal, gave in evidence a deed from V. S. Ferris to himself, dated September 2, 1869, of the same premises set out to the appellee by the Probate Court. Also evidence tending to show that the appellant had paid about $25 in rent and taxes on the same, and that under an arrangement with said Joyal, he advanced him, in money and materials, about $—, to assist him in the erection of a house on the same. The appellant also testified that Lydia E. Joyal, mother of Joseph, had, previous to.the decree of the Probate Court, sold him her interest

in the estate of her son, in consideration of support he had already furnished her, and her future support; and that subsequent to the appeal, she had conveyed to him by deed, in pursuance of the original agreement, which was in parol. The appellee claimed that this evidence showed no such interest in the appellant as entitled him to an appeal, and that the court should so rule. But the court declined to so rule, and submitted to the jury to find whether the appellee was the lawful widow of said Joyal. The appellant offered the deed from Mrs. Joyal to him, in evidence; but the court excluded it; to which the appellant excepted. Said Joyal died without issue.

The appellant also offered the deposition of one Richard Moore, wherein the deponent testified that said Joyal's parents told him in July, 1864, that Joyal and his son were in the army, and that the appellee left said Joyal when said son, who was then about eighteen, was a small child, and did not live with him after that. The appellee objected to this portion of the deposition, and the court excluded it; to which appellant excepted.

*Davis & Adams*, for plaintiff.

The appellee was not a competent witness to her alleged marriage to the intestate, nor to the alleged death of her husband, George Edwards, nor to any fact bearing upon the question in issue and on trial. None of the cases where it has been held that the witness was competent, are analagous to this. The case at bar is in strict analogy with the cases of *Fitzsimmons* v. *Southwick*, 38 Vt. 509; *Hollister* v. *Young*, 41 Vt. 156; s. c. 42 Vt. 403; *Merrill* v. *Pinney*, 43 Vt. 605; *Roberts* v. *Lund*, 45 Vt. 82; and *Wood* v. *Shurtleff*, 46 Vt. 325.

The exclusion of the testimony of Mrs. Bundy was improper. The appellee claiming to recover on the ground that she was the lawful widow of the intestate, she is now estopped from claiming that his declarations are inadmissible. The portion of Moore's deposition excluded, should have been admitted. The appellant had such an interest in the subject-matter as gave him the right of appeal.

*L. E. Pelton* and *H. S. Royce,* for defendant.

The real parties to the suit are Mrs. Joyal and Stevens. Mrs. Joyal does not claim in opposition to the title of the intestate. She does not claim by virtue of any contract between herself and the intestate. The marriage contract did not have the effect to vest the title to the property in her, as in the case *Fitzsimmons* v. *Southwick,* 38 Vt. 509. The statute provides that "where an executor or administrator is a party, the other party shall not be a witness," &c. Therefore, if any contract to which the intestate was a party, was really in issue, Stevens would be excluded as a witness. Joseph E. Joyal was never a party to the cause of action, or the contract in issue. *Flinn* v. *Coffee,* 12 Allen 133 ; *Shailer* v. *Bumstead,* 99 Mass. 133. Where the contract comes into the case collaterally, the parties to it are not excluded from testifying. *Morse* v. *Law,* 44 Vt. 561 ; *Granger* v. *Bassett,* 98 Mass. 468 ; *Knowles* v. *Baxter,* 12 Allen 119.

The letters of George Edwards were admissible. 1 Greenl. Ev. 104.

The proof offered of a parol agreement by which the mother of the intestate was to sell, or did sell, her interest in the estate to Stevens, and of the conveyance *pendente lite,* was properly rejected. The parol agreement was void by the Statute of Frauds, and the rights of the parties could not be affected by the deed.

The village lot which is a part of the property in dispute, was leased to the intestate, and the intestate built the house. The estate consists of the intestate's interest in the property as lessee. But Stevens, by his deed, took only the lessee's interest. . Therefore, he cannot sustain the suit.

The opinion of the court was delivered by

WHEELER, J. The appellee has made a point in this case, that the appellant has not sufficient interest to entitle him to take an appeal from the decision of the Probate Court, and be heard upon it in the County Court. But that objection does not appear to have been taken until after issue had been joined, and the trial of it begun ; and whatever consideration it might have been entitled to if it had been made on the entry of the appeal in the

County Court, or within the time allowed for filing dilatory pleas and motions there, at the time it was made, the court was not bound to consider it, and there was no error in not sustaining it.

The appellant has made three other questions upon his exceptions in this court. The issue on trial was, whether or not the appellee was the widow of the intestate. The appellant claimed that she was not, because she had a former husband, named Edwards, living at the time of her alleged marriage with the intestate, which, if true, would make her marriage with him void.

In support of this claim, the appellant appears to have put in evidence without objection, tending to show that the intestate introduced a man to one Bundy, his brother-in-law, as Edwards, her husband, at Rutland, after her alleged marriage to the intestate ; and then he offered to show that afterwards, the intestate told his sister, Mrs. Bundy, that Edwards, the husband, had been at Rutland, and if she did not believe it to ask Bundy, which evidence, on objection, was excluded, and he claimed that there was error in this exclusion. But this statement was not a part of any transaction that it would characterize, nor was it the admission of any fact that can in any way be said to have been against the interest or title of the intestate, under whom the appellee claims as widow, for it was not anything that could affect his right or title in any way, but it was a mere naked statement of his, as offered, no more admissible than if made by any other person, and could not on any ground be properly admitted.

Another question is as to the exclusion of a part of the deposition of Moore. The material part excluded was as to what the parents of the intestate told the deponent about the past relations between the intestate and the appellee. Those statements were also mere narratives given by the parents of past transactions, and although of more moral force because made by those interested, and likely to know about their truth or falsity, were still mere hearsay, and were properly excluded as such.

The other and most important question made is as to the competency of the appellant as a witness upon the trial of her right to the estate. She claimed to be the widow, and to be entitled to the share of a widow. The issue on trial was whether or not she

was the widow. On this issue there was no question between her and the intestate, or his personal representatives, concerning his estate. He was dead, and could not be a party or interested, and all claims against the estate had been adjusted and settled, and the amount and situation of it ascertained, and the only question remaining was between her and the heirs-at-law, as to which should have it. On this question, the existence of a marriage contract between her and the intestate would come in question, and would in some remote sense be in issue and on trial, but not directly so.

The issue on trial was as to her status in the proceedings which were proceedings *in rem*, in reality, and involved her relations to the living heirs directly, and to the deceased intestate only incidentally. *Downs* v. *Belden*, 46 Vt. 674. If a person should claim to be brother in the distribution of an estate, and other heirs should deny his brotherhood, and claim he was spurious, the marriage contract between the father and mother on the trial of the question, would come in issue to some extent, but no one would probably claim that if the father was dead the mother could not testify, nor *vice versa*. So here, the marriage contract was in issue, but only collaterally so, and the death of one party to it would not exclude the testimony of the other, within the meaning of the statute.

Judgment affirmed, to be certified to the Probate Court.