## L. C. PARTCH *v.* S. A. SPOONER.

*Adverse Possession. Charge of the Court. Presumption. Deposition. Practice.*

1. The court charged that the possession, to gain a good title, must be " actual, continued, visible, notorious, distinct, and hostile." The exception was general; *Held*, no error; and that if counsel desired further explanation of the terms used, they should have so informed the court in the time of it. But Rowell, J., thought the case showed a *mixed possession*, and that the word *exclusive* should have been incorporated into the definition.
2. It will not be presumed, that there was no evidence to show that the plaintiff's possession was definite in extent; it will be presumed, that the court properly instructed the jury as to what would interrupt the plaintiff's possession; and that it distinguished between acts of trespass and acts of possession, &c., when it did not appear that these were specially excepted to, and it did appear that the charge was satisfactory on all points not excepted to.
3. A deposition is admissible though the certificate thereto was written by the attorney of the party offering it.

TRESPASS on the freehold. Plea, the general issue. Trial by jury, December Term, 1884, VEAZEY, J., presiding. Verdict for the plaintiff.

The controversy was as to the title and ownership of about eight acres of swamp timber land. The defendant admitted the cutting and removal of the trees on the most of the land; but claimed it was his land. Both parties put in evidence title deeds, showing title to a piece of land back through conveyances to a common owner, one Haight. The

Haight deed in the plaintiff's chain of title was dated in 1827; in the defendant's, 1832.

The land in question was a back lot; and the plaintiff and his father before him, to whom Haight conveyed in 1827, lived some six or eight miles from it; and the defendant lived within one half mile of it; and owned wood land adjoining on the south. The defendant got title from his father's estate, and his father's title run back to 1855.

The description in the said Haight deeds continued about the same in the subsequent deeds respectively. Each party claimed and put in evidence tending to show that the land in controversy was the piece described in their respective chains of title from Haight.

As to whether the disputed land was the piece described in the deed from Haight to the plaintiff's father, or was the piece described in the deed from Haight to Rutherford, dated 1832, and from him to the defendant's father in 1855, constituted the leading issue on the trial.

All the evidence of both parties bearing on this issue was similar in character and kind. It consisted mainly of evidence of ancient corners, marked lines, surveys, declarations of former owners, and acts of occupancy, and claim by the parties and their respective grantors.

A considerable portion of the growth on this land consisted of cedars, well adapted for posts, rails, and hop-poles. There was also some pine, hemlock, and hardwood timber thereon.

Each party put in evidence, tending to show that he and his grantors had, for many years,—thirty, forty, or more,— been in the habit of going on to this disputed land nearly every year and getting a load of posts or rails, or a stick of timber for some particular use; and in some instances something more in amount of wood or timber.

The acts of occupancy shown upon both sides were very similar; and the testimony tended to show they were about alike in frequency and during the same time, except as

Partch *v.* Spooner.

herein stated. There was no positive testimony tending to show that either party knew of any occupancy by the other or claim of ownership until recently. This stood upon inference from the acts themselves, and the circumstances. Neither was there any claim that the said two Haight deeds described or covered the *same piece of land.* The defendant did not claim all the disputed land; but claimed the most of it. And another form of stating the controversy would be, that it was as to the true location of the defendant's north line, he being the adjoining owner on the south.

Each party also claimed that even if he failed to show record title, he had established a good possessory title.

The claims on this point were identical, and were based, as before indicated, on about the same character, kind, and extent of occupancy, except that the testimony of the defendant tended to show such acts of occupancy somewhat further back than the testimony of the plaintiff tended to show his acts. But the testimony on both sides tended to show back much more than fifteen years before this suit was brought.

The theory of each party was, that the other party had mistaken the location of the land conveyed to him.

The testimony as to acts of occupancy was such as to leave some ground for argument as to whether they were on this particular piece of land. This was especially true as to the alleged acts of the defendant, as he owned similar land adjoining on which he was performing similar acts, and there was nothing to mark any division line with such distinctness as to attract attention to a casual observer.

The plaintiff had owned no adjoining land.

The court charged the jury upon all the points made by the evidence and suggested by counsel, in a manner to which no exception was taken, except to the part of the charge as follows:

"Both parties make the same claim of possessory title. That is, they each say that if their respective deeds do not.

cover this disputed land, yet they each claim to have been in such possession of the disputed land as to gain a good title by adverse possession.

"A person although he has no deed or instrument to show color of title, yet may gain good title by adverse possession, but his adverse possession must continue for fifteen years. In other words, in order to constitute title by adverse possession in the absence of any deed or other instrument showing color of title, the possession must be actual, continued, visible, notorious, distinct, and hostile for the full period of fifteen years.

"The plaintiff says that if you should find he has no deed of the disputed land, then he has gained title by such possession as I have described. The defendant says exactly the same on his part. Suppose you should find the plaintiff has no title by deed, to the disputed land, on the ground just alluded to, that he has mistaken the location of his land as described in his deed, then has the plaintiff and his grantors since 1827, when Haight deeded to Dr. Partch, been in the actual, continued, visible, notorious, distinct, and hostile possession for fifteen years? On this point you are to regard the character of this little swamp lot, the use it was put to, the kind of acts done on it. The plaintiff does not claim to have done much on it at any one time; but does claim to have gone on from year to year, nearly every year, and got a load of rails, posts, or something of the kind. Go back in your minds, and see just how these parties were situated, just how the land was situated, what use it was put to, and capable of; how the parties regarded it. Look at it as it was before this hop business gave such impulse to this kind of property. Looking at this matter as indicated, then say whether the plaintiff's acts of possession were notorious, distinct, and visible.

"Plaintiff was not obliged to be there every day, or even every year, in order to make his possession continuous. But were they the acts of such character under the rules I have stated as to create a possessory title as against the actual title? because we are now assuming that you first find that the defendant has the actual title. The plaintiff's evidence tends to show his acts of possession were frequent enough to make it continuous; but that is for you to say. I apprehend the more difficult question on this branch of the case is, whether the acts were such in other respects under the

Partch *v.* Spooner.

circumstances, as the rule requires to create a possessory title.

"If you should find they were, then on the theory now assumed, that the actual title by deed was and is in the defendant, if you find these came up to the requirements of the rule, then the plaintiff could only gain title by possession to the extent of his actual possession. That is, if plaintiff and his grantors only went on, got stuff off from ten rods square, he would acquire title only to that extent, provided you find defendant had taken possession under his deed, as his evidence tends to show. If defendant had a deed, and took possession under it, the plaintiff could not gain possessory title as against it, only to the extent that he went into actual occupation and possession under claim of right.

"We have on this point assumed that you find that the defendant had and has the record title; but now change this right round, and suppose you find the plaintiff has the record title to this land; then under the defendant's claim of a possessory title, you will apply just the same rules as to him that I have stated as to the plaintiff.

"The defendant's testimony tends to show his acts were just about the same, and of the same frequency as the acts of the plaintiff were. When he wanted a few posts or rails, or something of the kind, he says he went there and got them. It was handy, road to it, owned adjoining land south. He apparently supposed he owned this land, as the plaintiff supposed he owned it. The parties lived several miles apart.

"Applying the same rules, as I stated as to the plaintiff, do you find that the defendant acquired a good possessory title, as against the plaintiff's deed? If he did, then it would be limited to his actual possession just as I stated as to the plaintiff."

It was conceded that the certificate to the deposition was written by the plaintiff's attorney instead of the magistrate who took and wrote the deposition.

*W. W. Rider* and *W. C. Dunton,* for the defendant.

The deposition was improperly admitted. R. L. ss. 1033–4; *Lund* v. *Dawes,* 41 Vt. 370; *Johnson* v. *Perry,* 54 Vt. 459.

The court erred in the charge to the jury on the subject of adverse possession, as set forth in the exceptions. The jury's attention was not directed to the fact that both parties were in possession of the premises in dispute, cutting timber thereon, and claiming to own the same, during the period that was claimed by the plaintiff, that he had gained title thereto by adverse possession.

They should have been told that the possession must have been *exclusive.* This was entirely omitted, and was error. The question of mixed possession should have been called to the attention of the jury, with proper instructions. *Webb* v. *Richardson*, 42 Vt. 465; *Sumner* v. *Stephens*, 6 Met. 337; *Stearns* v. *Henderson*, 9 Cush. 497; 4 N. H. 376; *Little* v. *Downing*, 37 N. H. 367; 3 Wash. R. P. p. 153; Tyl. Eject. 908. The jury should also have been told that the possession, to ripen into a title, was *definite* in extent: Wash. R. P. (4 ed.) p. 135; that the doctrine of prescription did not apply if both parties were in possession at the same time: 9 Allen, 529; 6 Johns. 218; 10 Mass. 151; Tyl. Eject. 904; 3 Mass. 219. The court failed to distinguish between acts of trespass and acts of possession. 3 Wash. R. P. p. 138; 53 Vt. 308.

The court was bound to charge on all material points. 16 Vt. 266; 23 Vt. 498.

*A. V. Spaulding,* for the plaintiff.

The deposition was admissible. R. L. s. 1034; *Moulton* v. *Hall,* 27 Vt. 233. The charge as to adverse possession was correct. *Barlow* v. *Bowne,* Brayt. 135; *Plimpton* v. *Converse,* 44 Vt. 158; 2 Smith Lead. Cas. 472, *n.;* 6 S. & R. 21; *Hodges* v. *Eddy,* 38 Vt. 327.

The opinion of the court was delivered by

ROWELL, J. Lawrence's deposition was properly admitted. No reason can be given why an agent or attorney, or a person interested in a cause, should be prohibited from writing the certificate and caption of a deposition to be used

in such cause; but good reason exists why they should not be allowed to indict and draw up the story itself, and give it form and dress; and this, and this only, is what the statute intends to prohibit. *Moulton* v. *Hall,* 27 Vt. 233.

The defendant took a general exception to that part of the charge detailed, without pointing out any specific objections thereto. It is now objected that the case disclosed a *mixed possession* of the parties, and that therefore the court was called upon to direct the attention of the jury to that feature of the case, and to tell them that the plaintiff's possession must have been *exclusive,* and what would amount to an interruption of it, and that, if they found that both parties were in possession of the same land at the same time, claiming adversely, the doctrine of adverse possession would not apply. It is also objected that the court failed to distinguish between acts of trespass and acts of possession, and to instruct the jury that the acts of possession must have been such as to indicate that there was an adverse claimant who purposed to keep out the true owner; and that there was no evidence that plaintiff's possession was definite in extent, without which he could not recover on the ground of adverse possession.

The objection first named is the one most urged and relied upon.

It is difficult to lay down a precise rule by which to determine in all cases the character of that adverse possession necessary to confer title. Mr. Angell says that perhaps the clearest and most comprehensive rule is, that it must be an actual, a visible, and an exclusive appropriation of land, commenced and continued under a claim of right. Angell Lim. s. 390. In *Hawks* v. *Senseman,* 6 S. & R. 21, Mr. Justice DUNCAN defines it to be an actual and a continued, visible, notorious, distinct, and hostile possession; and the American editors of Smith's Leading Cases—Vol. 2, p. [*561]—say that this is a singularly accurate and complete definition; and this is the definition adopted by the court

below, and it is probably as good and as comprehensive a definition as can well be given, though I for one would incorporate into it the word *exclusive,* believing that it would extend the legal scope of it, and make it more applicable to cases tending to show a *mixed possession,* as I think this case does. But my brethren all differ with me on this point, and think this is not a case of mixed possession, but that the fair inference from the exceptions is that each party possessed different parts of the lot; and that if this were not so, the charge conveyed the idea of exclusiveness with sufficient certainty, and was couched in apt legal language, and that if counsel desired a more full explanation and amplification of the terms used, they should have informed the court so in the time of it.

As to the objections that the court did not instruct the jury what would interrupt the plaintiff's possession, and failed to distinguish between acts of trespass and acts of possession, and to explain what the acts of possession must have indicated as to an adverse claimant and his purpose,— it is sufficient to say, especially as it appears that on all points not excepted to the court charged fully and satisfactorily, that it must be presumed that the court charged correctly on all these points.

The objection that there was no evidence to show that plaintiff's possession was definite in extent has no force, for the case does not show the absence of such evidence, and its absence cannot be presumed.

Judgment affirmed.