## CATHERINE FOSTER'S *Exrs. v.* DELIA S. DICKERSON, *et al.*

*Will. Legatee a competent witness. Mental capacity. Expert evidence. Objection to form of question. Leading question. Undue influence. Hypothetical question. Error not prejudicial. Instructions to jury. Subsequent declarations of testator. Request to charge.*

1.  A legatee is a competent witness to the capacity of the testator.

2.  For the purpose of proving want of mental capacity the contestants introduced evidence tending to show that the testatrix had many insane delusions, and that among other things she continually accused her husband of improper conduct with other women. *Held*, that the proponents might show in rebuttal what the conduct and reputation of the husband in this respect was, so far as it was known to the testatrix.

3.  A witness, not an expert, may give an opinion as to the insanity of a person, based upon conversations or dealings had with that person ; and that such conversations or dealings have been limited in extent, goes not to the admissibility, but to the weight of the evidence.

4.  An objection, which refers merely to the form of a question, must be defined when made, or it will not be afterwards available.

5.  Where an objection is pointed out in the trial court, the excepting party is confined to that ground of exception in Supreme Court.

6.  A non-expert witness, testifying from facts within his own observation, may give an opinion as to the sanity of the person whose capacity is on trial, notwithstanding that is the very question for the jury, and an expert witness may do the same, although he bases that opinion upon facts testified to by others.

7.  A witness, who had had great experience in nursing and caring for the insane, having testified that she had seen and conversed with the intestate for an hour at a time on two or three different occasions, and that there was nothing in her manner to indicate impairment of mind, may be further asked the qustion, "Do you think you could have seen

Catherine Foster's *Exrs. v.* Delia S. Dickerson, *et al.*

and conversed with Mrs. Foster an hour and a half as you conversed with her, and not have discovered any insanity if any existed in her?" as against the objection of the contestants that it was leading and that the proper foundation had not been laid for it.

8.  Where witnesses testify that they, from their conversations with the intestate regarded her as insane, they may be asked upon cross-examination what the statements upon which they base their opinions were.

9.  A witness for the proponent having testified that the intestate gave a deposition before him and that she appeared sane, it is not competent for the contestants to prove that other persons, the while inmates of an insane asylum, have given intelligent depositions and been permitted to testify in court.

10.  A former attorney testified that from his transactions with the testatrix he considered her insane and that one of these transactions was the drawing of a petition to the Probate Court which was at the time read to her. *Held*, that the petition was admissible.

11.  For the purpose of showing the feelings of the testatrix towards her relatives, and as bearing, therefore, upon the question of undue influence, letters written by the testatrix, and those written by her relatives, the contents of which must have been known to her are admissible.

12.  The writer of such a letter may explain the circumstances under which it was written, and the meaning which she intended to convey.

13.  A judgment will not be reversed for error in the admission of testimony, unless the exceptions affirmatively show that the testimony " in the then present aspect of the case " was inadmissible.

14.  The proponents are not confined to the same hypothetical questions which the contestants have propounded to their expert witnesses.

15.  The contestants propounded a certain hypothetical question to their expert witness. The proponents introduced an expert, who also had an intimate personal acquaintance with the testatrix. After having testified fully as to his knowledge of her, he was asked to give an opinion of her sanity, assuming that the facts stated in the hypothetical question of the contestants were true and combining those with his own knowledge of the testatrix. *Held*, that by his " own knowledge" must be intended the facts which he had already recited, and that so understood the question was admissible.

16.  An expert may be asked to base an opinion upon the testimony of a

witness to which he has listened, assuming that testimony to be true.

17. The excepting party cannot claim that as error which he insisted should be done in the court below.

18. Judgment will not be reversed for an error beneficial to the excepting party.

19. The parties having stipulated that the stenographic minutes of testimony taken on the trial of this cause before the Probate Court might be used in the County Court, if a witness was "unable to attend court by reason of sickness," the fact that a witness had been in attendance on County Court and had there testified, does not prevent the use of his testimony taken in the Probate Court, if the witness is unable to attend court when that testimony first becomes pertinent.

20. The action of the County Court in construing a stipulation between counsel will not be revised by the Supreme Court, if the stipulation is susceptible of the construction put upon it by the court below.

21. *Held,* that the court did not in effect instruct the jury that the testimony of a subscribing witness as to the capacity of the testative was to be given any greater weight than that of other witnesses having the same means of knowledge.

22. *Held,* that the court correctly instructed the jury as to the bearing of the subsequent declarations of the testatrix, upon the issues of testamentary capacity and undue influence.

23. It is a sufficient compliance with a request to charge to read it to the jury and tell them that it embodies good law.

24. In order to set aside a will for undue influence it must appear that the influence was exerted upon the very act of making the will.

25. And the influence must proceed to that extent that the free agency and independence of the testator is overcome, and he is constrained to do what is really against his will.

26. The court was not bound to tell the jury how much evidence would sustain a verdict upon the ground of undue influence.

This was an appeal from an order of the Probate Court for the District of Franklin, admitting to probate an instrument purporting to be the last will and testament of Catherine A. Foster. The contestants plead : First, that the paper was not the last will and testament of the said Catherine A. Foster.

Second, that the testatrix did not have sufficient mental capacity to make a will. Third, that the instrument was procured by · undue influence and fraud. Trial by jury at the April term, 1888, Franklin county, Veazey, J., presiding. Verdict for the proponents. The contestants except.

The letters referred to in the opinion were letters which passed between the legatees under the will, and the contestants at the time of the confinement of the testatrix in the insane asylum, and had reference to her confinement there and final cure and release.

The stipulation referred to in point XV of the opinion was as follows :

" Whereas at the trial of the above entitled cause before the Probate Court for the District of Franklin the testimony of witnesses produced before said Probate Court and taken to be used before said Probate Court, was written down in full by John H. Mimms for the use of said Probate Court and said copy is now in the hands of said Probate Court.

Now it is agreed in the above entitled cause that the testimony so taken and used before said Probate Court of witnesses that may be deceased, or unable to attend court by reason of sickness or accident, or absent from this State, at the time said cause is tried in said Franklin County Court, may be read from said copy in the hands of the Probate Court, to the same extent that such witnesses might testify by laws and rules governing the admission and rejection of evidence, if present in court at the time of trial and offered as witnesses in said cause. Provided however that the testimony of the following witnesses used before said Probate Court is excepted from this agreement, viz : The three attesting witnesses to the will in question.·

Persons absent from the State at the time of trial, referred to in the foregoing agreement shall include persons residing out of the State and who are not in the State at the time of the trial.

It is further stipulated that the witness Mrs. French of Bennington at the option of the proponents shall be considered unable to attend by reason of sickness under this agreement."

The remaining facts sufficiently appear in the opinion.

Catherine Foster's *Exrs. v.* Delia S. Dickerson, *et al.*

*Wilson & Hall*, for the contestants.

Mrs. Hayes, being a legatee under the will, was disqualified as a witness. The will if sustained, transfers the property in question to her. It is, therefore, in essense a contract one party to which is dead; hence the living party cannot testify. R. L. ss. 1001, 1002, 1003; *Davis, Admr. v. Windsor Savings Bank*, 48 Vt. 532; *Crocker, Exr. v. Chase*, 57 Vt. 413; *Pember v. Congdon*, 55 Vt. 58; *Barnes v. Dow*, 59 Vt. 530; *Farmers Ins. Co. v. Wells*, 53 Vt. 14; 1 Greenl. Ev. s. 329; *Lane, Exr. v. Lane*, 95 N. Y. 494; Id. 516; *Wade v. Pulcifer*, 54 Vt. 45; *Rooney v. Minor*, 56 Vt. 527; *Moore v. Taylor*, 44 N. H. 370, 375; *Chandler v. Davis*, 47 N. H. 462, 464; *Welch v. Adams*, 1 N. E. Rep. 59; 56 Am. Rep. 521.

The letters were inadmissible, being simply the declarations of third parties. *Edson v. Pawlet*, 22 Vt. 289; *Baird and Wife v. Fletcher*, 50 Vt. 603; *State v. Tatro*, 50 Vt. 483; *Ross v. White*, 60 Vt.; 1 Greenl. Ev. ss. 123, 124; *Ellis v. Cleveland*, 55 Vt. 358; *Stevens v. Joyal*, 48 Vt. 291.

Goodridge, who was permitted to give an opinion as to the sanity of the testatrix, was not an expert witness, and had only seen her briefly upon two occasions. He did not disclose a sufficient acquaintance with her to make his testimony competent. *Hathaway v. Nat. Life Ins. Co.*, 48 Vt. 335; *Crane v. Crane*, 33 Vt. 15; *Clapp v. Fullerton*, 34 N. Y. 190; *Reed v. People*, 42 N. Y. 270.

It was improper to allow Mrs. Hayes to explain what she meant by her letter to Mr. Foster. This was the introduction of parol evidence to vary a written instrument. *Cook v. Shearman*, 103 Mass. 21; *Selby v. Friedlander*, 22 La. Ann. 381.

The question put Dr. Foote, in which he was asked to couple his own knowledge of the testatrix with the facts assumed in the hypothetical question to Dr. Draper, was inadmissible. It is never permissible to couple with a hypothetical question facts that the evidence in the case has no tendency to prove. *Wetherby*

v. *Wetherby,* 38 Vt. 455; *Fairchilds* v. *Bascomb,* 35 Vt. 398; *Thayer* v. *Davis,* 38 Vt. 163; *Lester* v. *Pittsford,* 7 Vt. 158; *Hathaway* v. *Nat. Life Ins. Co.,* 48 Vt. 335; *Thornton* v. *Thornton,* 39 Vt. 122; *Louisville Rd. Co.* v. *Faldey,* 1 West R. 878; Best Ev. (Morgan Ed.) 874 and note; *Luning* v. *State,* 1 Chand. (Wis.) 178; *State* v. *Clark,* 12 Ired. 151; 1 Greenl. Ev. 492.

Nor is it permissible to include in hypothetical questions, the opinions or conclusions of other witnesses as was done in the question to Dr. Hamilton. *Wetherby* v. *Wetherby,* 38 Vt. 455; *Fairchilds* v. *Bascomb,* 35 Vt. 399; *Louisville Rd. Co.* v. *Faldey;* 1 West. R. (Ind.) 878.

The charge of the Court as to the weight which should be given the testimony of a subscribing witness was erroneous. The evidence of such a witness is entitled to no greater consideration than that of any other. *Thornton* v. *Thornton,* 39 Vt. 157.

The declarations of the testatrix made subsequent to the execution of the will, were admissible upon the questions of affection or prejudice. *Lewis* v. *Mason,* 109 Mass. 169; *Shailer* v. *Bumsted,* 99 Mass. 126-7; *Johnson* v. *Brown,* 51 Tex. 66; Canada's Appeal, 47 Conn. 450; *Heistu* v. *Heistu,* 116 Pa. 612; Abbott, Trial Ev. 122, s. 70.

The charge of the court as to the manner in which and when influence might be proved was erroneous. The fact of undue influence may be inferred from the will itself, from the relations of the parties, and from proof of influence and control in other matters without any direct evidence as to the circumstances under which the particular will was made. *Baylies* v. *Spaulding,* 1 N. E. R. 914; Saunder's Appeal, 54 Conn. 108.

*Ballard & Burleson, Farrington & Post,* and *J. Noble Hayes,* for the proponents.

The legatee, Mrs. Hayes, was a competent witness. In no

sense can a will be construed as a contract, to which the legatees upon the one part, and the testator upon the other are parties. *Garvin, Admr.* v. *Williams,* 50 Mo. 212; *Gamache* v. *Gamfs,* 52 Mo. 287; *Stevens* v. *Joyal,* 48 Vt. 295; *Wyman et al.* v. *Syms,* 10 Allen 153; *Shailer* v. *Bumsted,* 99 Mass. 112; *Dikes* v. *Malahi,* 6 Mo. 171; *Entwhistle* v. *Feighner,* 60 Mo. 214; *Miltenberg* v. *Miltenberg,* 78 Mo. 27; *Lamb* v. *Lamb,* 2 West Rep. 698; *Flood* v. *Pragoff,* 79 Ky. 608; Mower's Appeal, 48 Mich. 442; *Nash* v. *Reed,* 46 Me. 230; *Bird* v. *Jones,* 37 Ark. 195; *Bronzemam* v. *Browning,* 31 Ark. 364; *Puries* v. *Orth,* 88 N. Y. 477; *Cole* v. *Denri,* 3 Hun. 610.

The ruling of the court that the witness Goodridge · had sufficient acquaintance with Mrs. Foster to express an opinion as to her sanity or insanity, cannot be revised in this court. *Randolph* v. *Woodstock,* 35 Vt. 291-94-96.

The question put Alice Mack was a proper one. She was offered as an expert, and it was solely within the discretion of the County Court, to say whether she had qualified as such. If the question was leading, the court might allow it to be asked in its discretion. *Cavendish* v. *Troy,* 41 Vt. 99, 108; *State* v *Phin,* 48 Vt. 366-77.

Mrs. Hayes was properly allowed to explain what she meant by her letter. This did not vary the terms of the written instrument, but simply showed what meaning was to be put upon those terms. *Bracket et al.* v. *Wait & Moulton,* · 6 Vt. 411, 425; *Noyes* v. *Canfield,* 27 Vt. 79; 1 Greenl. Ev. ss. 288, 288a.

It was permissible to show that the conduct and reputation of the husband of the testatrix as to his relations with other women, were such as the testatrix accused him of. This testimony showed that these accusations were not insane hallucinations, but based upon facts. *Bank of Middlebury* v. *Rutland,* 33 Vt. 414, 430; *Richardson* v. *Hitchink,* 28 Vt. 757; *Hard* v. *Brown,* 18 Vt. 87; *Lee* v. *Kilburn,* 3 Gray 594; *Bartlett* v. *Decreet,* 4 Gray 113; *Carpenter* v. *Leonard,* 3 Allen 32; *Whitcher* v. *Shattuck,* 3 Allen 319.

There was no error in the hypothetical question put by the proponents. The proponents were not confined to the same hypothetical question which had been asked by the contestants. They might require from their expert witnesses an opinion upon the assumption that the facts testified to by one or more witnesses were true so long as those facts were not conflicting. *Gates v. Fletcher*, 67 Wis. 504-7 ; *Wetherbee, Exr.* v. *Wetherbee*, 38 Vt. 454 ; *Johnson* v. *Central Vt. Rd. Co.*, 56 Vt. 708 ; *Meeker v. Meeker*, 74 Iowa, 352-4-7.

The charge upon the question of undue influence and the manner in which that could be proved, was correct. *Trumbull et al.* v. *Gibbons*, 2 Gab. (N. Y.) 117, 136 ; *Taylor* v. *Kelley*, 31 Ala. 59, 70 ; *Hall* v. *Hall*, 58 Ala. 131-4.

The letters introduced in evidence, accompanied by proof that the testatrix knew their contents, were competent as bearing upon the question of undue influence, in that they showed the relations between the testatrix and the legatees and contestants, and what the feelings of the testatrix probably would be. Greenl. Ev. s. 101 ; *Wheeler* v. *Anderson*, 3˙Hagg. C. Cl. 574, 608 ; *Wright* v. *Tatham*, 1 Ad. & El. 3 ; 7 Ad. & El. 313 ; s. C. 4 Bing., N. C. 489 ; *Waterman* v. *Whitney*, 11 N. Y. 164 ; Shouler Wills, s. 193 ; *Sutton* v. *Sutton*, 5 Harr. 459 ; *Couch* v. *Couch*, 7 Ala. 519.

The subscribing witnesses to a will are competent to express an opinion as to the mental capacity of the testator without proof of any special acquaintance with him. The mere fact that they act in that capacity, qualifies them to express an opinion for whatever under the circumstances it may be worth. *Williams* v. *Lee*, 47 Md. 159 ; *Van Huss* v. *Rambult*, 42 Tenn. 139 ; *Needham* v. *Ide*, 5 Peck, 510 ; *Gibson* v. *Gibson*, 9 Yerger, 329 ; *Brooke* v. *Townsend*, 7 Gill. 10 ; Red. Am. Cas. Wills, 89; *Thornton* v. *Thornton*, 39 Vt. 122.

It was proper for Dr. Foote to testify as to his action in reference to the release of the testatrix from the insane asylum, and

that he interested himself in that matter by the request of Mrs. Hayes, this fact being known to the testatrix.  *Bateman v. Bailey*, 5 T. R. 512; Greenl. Ev. 108; *Hill* v. *Morth*, 34 Vt. 604.

The opinion of the court was delivered by

THOMPSON, J.   This is an appeal from a judgment admitting to probate an instrument purporting to be the last will and testament of Catherine A. Foster.

The contestants are the heirs at law of the testatrix, and oppose the allowance of such instrument on the ground of want of mental capacity in the testatrix to make a will, and that the instrument was procured by undue influence and fraud.

1.   Mrs. Julia Hayes, one of the legatees under the will, subject to the contestants' exception, was admitted as a witness on behalf of the proponents and was allowed to testify upon all the material issues in the case.   The evidence of the contestants tended to show that this witness was one of the parties who exercised an undue influence over the testatrix, if any was exercised, in the production of the instrument admitted to probate, and they insist that she is a party to this issue raised by the pleadings and on trial, especially as she is a beneficiary under this instrument, and that the deceased testatrix is the other party thereto, and that consequently Mrs. Hayes is not a competent witness by reason of the provisions of R. L. ss. 1002, 1003. This is not a case "where one of the original parties to the contract or cause of action in issue and on trial is dead."   There was no cause of action until the death of the testatrix.   The testatrix by her legal representatives is not a party to these proceedings or in any way interested therein, directly or indirectly.   The controversy is between living parties, who, on the one side, are the legatees under the will, represented by the proponents, and on the other side, are the heirs at law of the testatrix.   The former claim to take the estate under the will, and the latter under the statute regulating the descent of estates, insisting that

the alleged will is a nullity. The act of the testatrix in making the alleged will is only the subject matter of the investigation. The proceedings to have the will admitted to probate are in the nature of proceedings *in rem* and establish the relation of all parties to the *corpus* of the estate. The gist of the action is not changed by the fact that the trial may indirectly involve a determination of the relations of the witness to the testatrix. "The probate of a will establishes its *status ;* and the *status* thus established adheres to the will ' as a fixture, and the judgment or decree in the premises unless avoided in some mode prescribed by law, binds and concludes the whole world.' " Freeman on Judgments s. 608.

Neither the creditors nor the debtors of · an alleged testatrix are affected by the allowance or disallowance of an instrument claimed to be her will. Their rights and liabilities remain the same in either event.

In *Stevens* v. *Joyal*, 48 Vt. 291, which was an appeal from the decree of the Probate Court decreeing the entire estate of Joseph E. Joyal to the defendant as his lawful widow, it was held that the widow was a competent witness to establish the fact of her marriage with her alleged husband. The same objection to her competency as a witness was raised in that case that is urged in this. It was necessary to establish her marriage to entitle her to take the estate as widow. The question there decided is identical in principal with the question under consideration. Adhering to the rule laid down in that case, we hold that Mrs. Hayes was a competent witness.

2. Under their plea of want of mental capacity to make a will, the contestants introduced evidence tending to show that prior to the execution of the alleged will, the testatrix was subject to insane manifestations as to her dress, and in her conversation, statements, acts and conduct, and especially in regard to her husband, by accusing him of improper intimacy with other women and of cruel treatment of her by abusive language and by strik-

ing and beating her, and that these accusations were not based upon fact or reason, but were insane delusions; that this insanity was progressive in its character until the forepart of January, 1876, when she was confined in an insane asylum at Brattleboro, where she remained until Feb. 12, 1876, when she was released, improved, and returned to her home, but that she continued insane to the time of her decease. On the other hand, the evidence of the proponents tended to show that from a child Mrs. Foster had been of a nervous temperament and had always been peculiar and eccentric in her character and conduct; that her peculiarities and eccentricities continued the same in their manifestations until the time of her decease, except in the fall and winter of 1875, when she was attacked with erysipelas, and while suffering from this disease she was more or less in an excited condition mentally, which was increased by the presence of her husband against whom she continued to make charges as before stated, and while in this condition she was sent to the asylum; that she was not then and never was insane, but that she was in an excited and delirious condition, which was temporary, and that after she returned to her home, she was sane and of sound and disposing mind to the time of her decease. To rebut the testimony of the contestants tending to show that the testatrix' views of her husband's treatment of her, and his conduct toward her and other women, were insane delusions, it was competent for the proponents to show acts of ill treatment by the husband, and his conduct, reputation and character with reference to other women, so far as such conduct, reputation and character were known to the testatrix. If she had reasonable grounds for her charges against him, resting on facts or his reputation known to her, her charges in these respects would not indicate that she was insane, or that the views she held or the charges she made had their origin in and were the delusions of a diseased mind. Hence on the issue thus raised by the contestants, all the testimony of the proponents excepted to by the contestants, tending to show her husband's ill

treatment, his improper conduct with other women, and his reputation in that respect in the community, which were known to her, was admissible.

The testimony of Dr. George Dunsmore, that soon after Mr. Foster's return from Europe, he treated him for a venereal disease, and the testimony of Mrs. Swett that Mrs. Foster informed her that Mr. Foster had a disease of a private nature that he contracted in Europe, bore directly upon this issue raised by the contestants, and was clearly admissible.

None of the contestants' exceptions to this class of testimony are well taken. To sustain them would preclude the proponents from rebutting an issue raised by the evidence of the contestants.

3. It is well settled in this State that the opinion of a witness not an expert, upon the question of sanity or insanity, is admissible, when based upon conversations or dealings which he has had with the person whose sanity of mind is in question, or upon the appearance of such person, or upon any other fact bearing upon his mental condition, within the witnesses's own knowledge and observation, he having first testified to such conversations, dealings, appearance or other observed facts, as the basis of his opinion. *Lester* v. *Pittsford*, 7 Vt. 158 ; *Morse* v. *Crawford*, 17 Vt. 499 ; *Cram* v. *Cram*, 33 Vt., 15 ; *Hathaway* v. *Nat. Life Ins. Co.*, 48 Vt. 335 ; *State* v. *Hayden*, 51 Vt. 296; *Chickering* v. *Brooks*, 61 Vt. 554 ; *In re* Henry Blood's Will, 62 Vt. 364. Such witness cannot be precluded from giving his opinion because the conversations, dealings or other observed facts, were of a limited rather than of an extended character, nor because he is unable to give the conversation, but can only state the manner in which the party conversed, *Cram* v. *Cram*, *supra*. It is for the jury to say what credit and weight are to be given to the opinion of such a witness in view of the extent and character of the conversations, dealings or other observed facts to which he has testified, as well as his character and intelaligence and apparent interest or want of interest in the event of

the litigation. This rule disposes of the exceptions taken by the contestants to the admission of the opinion of this class of witnesses on the ground that the conversations, dealings or observation, constituting their knowledge of the testatrix, were too limited to render their opinion as to her sanity admissible.

It is contended that the form of the question to this class of witnesses in several cases, and in some instances to expert witnesses, was objectionable in that is called for the opinion of the witnesses in regard to the sanity or insanity of the testatrix, thus calling upon them to take the place of the jury, and determine the issue on trial in giving their opinion. The objection to these questions was general and did not call the attention of the court to the form of the question in this respect. When the subject matter of the inquiry is admissible, and only the form of the inquiry is objectionable, the objection must be so framed as to call the attention of the court directly to the precise defect in the form of the inquiry, otherwise such objection cannot avail the excepting party. Hence, if the questions were improper in the respect claimed, this objection cannot now avail the contestants.

However, when the question in issue is that of sanity or insanity, it is proper to ask a non-expert witness to give his opinion as to the person's sanity or insanity, based upon the facts concerning which he has testified. There is no difference in the rule permitting an expert or a non-expert witness to give his opinion in a case of this kind, except that the former is allowed to give his opinion upon facts testified to by other witnesses and which are assumed to be true, while the latter is limited to giving his opinion based upon the facts to which he has himself deposed. In neither case is the opinion evidence unless the jury find the facts proven, upon which it is based; if such facts are found, then such opinion is a fact for the jury to consider in connection with the other evidence, and the weight to be given it in the case of a non-expert witness is to be determined as above suggested, while in the case of the expert witness, its weight

must depend very largely upon his character, disinterestedness, intelligence, professional learning and skill. In *Hathaway* v. *National Life Ins. Co.* and *State* v. *Hayden, supra,* questions of the character objected to were permitted to be put to expert and non-expert witnesses, against the objection of the defendant, and this Court held that it was not error for the witness to state his opinion as to the sanity or insanity of the party, although that was the very question to be determined by the jury.

The attesting witness, Henry S. Goodrich, was asked by proponents this question : " Give your opinion as to her capacity to make a disposition of her property which she ( meaning Mrs. Foster ) does make by this will." It is not necessary to decide whether this question was admissible. The contestants objected to it " only on the ground that the witness had not seen her sufficiently to be able to judge." Where the objection is thus pointed out and stated in the exceptions, the excepting party is confined in this Court to the precise objection passed upon by the trial Court. *Bartlett* v. *Cabot,* 54 Vt. 242. There was no error in overruling this objection. We have carefully examined each of the numerous exceptions taken to this class of testimony by the contestants, and for the reasons stated, none of them are sustained.

4. The witness, Alice Mack, was shown to have been a nurse of the insane for many years, and to have had an extended experience in nursing the insane in private houses and in large institutions for the treatment of such patients in New York. She testified that she had seen and conversed with Mrs. Foster for an hour or two at a time on three different occasions, and that there was nothing in her manner to indicate impairment of the mind. She was then asked this question : " Do you think you could have sat and conversed with Mrs. Foster an hour and a half as you conversed with her, and not have discovered any insanity, if any existed in her ? " The contestants objected to this question on two grounds; first, that no foundation had been

laid "for showing an answer to the question," and secondly, for the reason that it was leading. This exception cannot be sustained on either ground. The question was not leading. It did not indicate the answer desired. The Court might well have found that this witness was qualified to testify as an expert. *Mason* v. *Fuller*, 45 Vt. 29. The exceptions do not show whether the Court so found or not. If necessary to uphold the ruling of the court below, this Court would presume such finding. Upon the principles already announced, the question objected to was proper to be put to her as a non-expert witness after she had testified as stated. The objection was not to the form of the question in thus calling for her opinion as to the sanity or insanity of the testatrix. As already stated, the contestants are confined to the precise objection passed upon by the court below.

5. The testimony of the witness, Mrs. Cora Wood, as to the effect of the presence of Mr. Foster upon the testatrix when he came into the room where she was and what the testatrix then said in his presence, was properly admitted as a part of the *res gestae.*

6. Mrs. Eunice Catlin, a witness called by the contestants, testified in her examination-in-chief that she should call the testatrix insane many times, when she was unwell and when excited, basing this opinion in part upon what the testatrix said about her husband. It was not error on cross-examination to permit the witness to state what the complaint of the testatrix against her husband was, which the witness considered in forming her opinion that the testatrix was insane. It was the right of the proponents to have the jury fully know all the facts, so far as she was able to state them, on which she based her opinion.

7. The witness, Merrill J. Hill, was permitted to testify that the testatrix appeared before him as a Master in Chancery in 1877, a few weeks after she was released from the asylum, and gave testimony in the case of *Hoyt* v. *Dewey,* which he took in

writing, and to state the circumstances under which the witness gave her testimony, her appearance and deportment at the time, and to state what questions were asked her by counsel in that case and the answers which she then gave to those questions, for the purpose of establishing a basis for his opinion as to her mental condition at that time. After having thus testified, he stated that he saw nothing in the deposition or on the occasion of giving it that indicated the presence of insanity in Mrs. Foster. This testimony was clearly admissible under the rule already laid down. It related to a period of time during which the contestants claim that Mrs. Foster was insane.

8. To rebut the testimony of Merrill J. Hill, the contestants offered "to show that Governor Underwood and others, while inmates of the asylum as insane persons, had given intelligent depositions and had been permitted to testify in Court." The Court properly excluded the testimony offered. It did not relate directly or indirectly to Mrs. Foster's condition at the time she gave her testimony before Mr. Hill. It was also open to the objection that it raised a new and immaterial issue in the case. If admitted it involved the inquiry into and a controversy over the precise mental condition of Governor Underwood and the other persons referred to, at the time they gave their depositions, and the character of the depositions, which might result in establishing that they were not insane when they gave their depositions, or if then insane, that their insanity was of a character entirely different from the alleged insanity of Mrs. Foster. To enter upon the trial of such immaterial side issues, would divert the minds of the jury from the real issue involved, prolong the trial indefinitely and defeat rather than promote justice. *Weeks* v. *Lyndon*, 54 Vt. 638

9. A. P. Cross, a witness improved by the contestants, testified that he was the attorney of the testatrix for some time after her husband's death in November, 1885.

After detailing the conversations and business transactions which he had with her as her attorney during that time, he testi-

fied that in his opinion she was not then sane. One of the transactions forming the basis of this opinion, was the making by him and the signing by Mrs. Foster of a petition to the Probate Court for an allowance to her as widow from her husband's estate. On cross-examination Mr. Cross stated that although he did not remember, he presumed he read this petition to Mrs. Foster; that she and Mrs. Hayes were in his office when he drew it, and they had the bills there with them mentioned in the petition. Against the exception of the contestants, the Court admitted this petition in evidence. It was admissible as a part of the *res gestae* forming the basis of Mr. Cross' opinion as to her insanity. The proponents had a right to have it go to the jury that it might fully appear just what the transaction was in which she was then engaged, as it might modify the weight the jury would give to Mr. Cross' opinion as to her mental condition at the time in question.

10. The issue of undue influence, as well as that of her insanity, involves the mental condition of the testatrix. A person of a weak, flighty, vacillating mind, may be unduly influenced by what would not in the least move to action a strong, well balanced mind. Most of the testimony in regard to the mental condition of the testatrix, therefore, also bore upon this issue. The issue of undue influence also involved the relations of the testatrix with and her feeling toward the contestants and those who are named as the objects of her bounty in the instrument proposed for probate. The fact, unexplained, that she made no provision for her half brother, and only to a very limited extent for her own sister, in the proposed instrument, would have a tendency to show that it was the product of undue influence. If, however, her relations with and her feelings toward the objects of her bounty were such that the attempted disposition of her property was not unnatural, the fact that she thus passed over near relatives, would not tend to prove undue influence. As tending to show her relations and feelings in this behalf, the

fifteen letters, all of which had been in her hands, under such circumstances as to show that she must have known their contentents, were admitted. The jury were carefully instructed to make no other use of them. For this purpose these letters were clearly admissible. Several of them were written during the time the testatrix was confined in the insane asylum, and disclose the views and feelings which the writers entertained in regard to that confinement. These views and feelings were such as would be likely to exert an abiding influence upon the testatrix, when known to her. It was her knowledge of their contents which rendered them admissible in this respect.

The letters written by the testatrix were admissible, not only to show her state of mind toward the contestants and those named as the objects of her bounty, but also to show her mental condition and capacity.

11. It was not error to allow Mrs. Hayes to explain the circumstances under which she wrote the letter introduced by the contestants and the meaning which she intended to convey by the language used. This is a privilege usually accorded to any witness or party. The purpose of allowing such explanation, is to enable the jury to consider the circumstances from the same standpoint as the witness. *Brackett* v. *Wait,* 6 Vt. 411; *Noyes* v. *Canfield,* 27 Vt. 79; *Gifford* v. *Thomas' Est.,* 62 Vt. 34. The contestants eventually laid great stress upon the word "hallucination" as used in this letter, and probably urged to the jury that it was used by the writer to charge Mrs. Foster with being insane. The fact that the primary meaning of hallucination, as defined by Webster and Worcester, is, "an error, a blunder, a mistake, a fallacy," brings the ruling of the County Court permitting an explanation of the sense in which the writer used that word, clearly within the rule stated in the cases cited.

12. Dr. Geo. Foote, a witness for the proponents, was permitted to testify that he knew of the fact that Mrs. Foster was confined in an asylum from what Mrs. Hayes told him, and that

Mrs. Hayes requested him to assist her and take Mrs. Foster into his institution and remove her from Brattleboro. All the acts of Mrs. Hayes in behalf of the testatrix so far as known to her were admissible to enable the jury to determine whether the disposition she made of her property in respect to Mrs. Hayes was natural and probable, and to rebut any inference of undue influence on the part of Mrs. Hayes. Her having interested Dr. Foote in Mrs. Foster's behalf while the latter was confined in the asylum, bore directly upon this issue. The contestants excepted to the admission of this testimony and now insist that it was error to admit it, because the exceptions do not show that the facts stated by him ever came to the knowledge of Mrs. Foster. In *Beard* v. *Murphy*, 37 Vt. 99, Poland, C. J. says : "We cannot manufacture or imagine errors for the purpose of correcting them. The party claiming that an error has been committed upon the trial against his legal rights, must make it appear affirmatively upon the record."

In *Boutelle* v. *Fire Ins. Co.*, 51 Vt. 4, it was a material question whether defendant's agent, Brown, heard a conversation between one Mills and the agent of another insurance company, had in the plaintiff's storehouse, while Brown was outside of it. Against the exception of the defendant, Mills was permitted to testify to the conversation he had with this agent while in the storehouse. In disposing of this exception, this Court by Ross, J., say : "It does not appear from the exceptions, that Brown was so far removed from the witness at the time of the conversation that he could not have heard the same.

If the conversation was in his hearing and so in his presence, it was admissible. It is incumbent on the excepting party to show that the evidence objected to was clearly inadmissible. This is not shown by the exceptions." In *Armstrong* v. *Noble*, 55 Vt. 428, which was an action of assumpsit on a promissory note endorsed to plaintiff when over due, it was urged in this Court that the exceptions did not show that certain evidence received was

admissible in support of the defence made. In the opinion delivered by Ross, J., the Court say: "But there may have been something in this evidence that tended to connect this phase of the defence with the note. This Court will not presume there was not, in order to find error in the action of the County Court in admitting this testimony." In the same case, the question also arose whether the wife of the payee of the note was a competent witness. She was permitted to testify at the trial below against the exception of the plaintiff. Neither the facts nor the pleadings showed that her husband had any interest in the event of the suit, and unless he was thus interested, she was a competent witness. In overruling this exception, the Court further said: "As has been frequently held and announced, error must appear upon the face of the exceptions. Every reasonable intendment is to be made in favor of the judgment of the County Court. It is for errors that appear upon the exceptions, and not for errors that rest on the assertion of counsel, that judgments are reversed. It is possible that the payee of the note is the real plaintiff. If not the real plaintiff, it is possible that he transferred it in such a way that he is legally bound to make good to the plaintiff whatever was apparently due upon the note at the time of the transfer. But there is no statement in the exceptions that either possibility is a reality. This Court would commit a grave error if it should reverse a judgment of the County Court upon a *conjecture.*" In *Tenney v. Harvey,* 63 Vt. 520, the question arose whether there was error in admitting certain evidence against the defendant's exception, and the Court say: "If this evidence was admissible under any conceivible state of the evidence not disclosed by the exceptions, then there was no error in admitting it." Among the more recent cases to the same effect are, *Clary v. Willey,* 49 Vt. 55; *Bradley v. Andrews,* 51 Vt. 525; *Gibson v. Vail,* 53 Vt. 476; *Burnham v. Jenness,* 54 Vt. 272; *Eames v. Brattleboro,* 54 Vt. 471; *Melendy v. Spaulding,* 54 Vt. 517; *Weeks v. Lyndon,* 54 Vt.

638; *Brownell* v. *R. R. Co.*, 55 Vt. 218; *McNeish* v. *The U. S. Hulless Oat Co.*, 57 Vt. 316; *Knight* v. *Smythe*, 57 Vt. 532; *Partch* v. *Spooner*, 57 Vt. 583; *Rawson* v. *Prior*, 57 Vt. 612; *State* v. *Nulty*, 57 Vt. 543; *Spaulding* v. *Warner*, 57 Vt. 654; *Reynolds* v. *Conway*, 61 Vt. 313; *Baker* v. *Ufford*, 63 Vt. 133. We think the true rule is, that to assign legal error in the admission of testimony, the exceptions must show affirmatively that, "in the then present aspect of the case," the testimony received was not admissible, unless accompanied with an offer to introduce other evidence which would make it admissible. *Conn. & Pass, R. R. Co:* v. *Baxter*, 32 Vt. 805; *Gifford* v. *Thomas' Est.* 62 Vt. 34. The rule is incorrectly stated in *State* v. *Hopkins*, 50 Vt. 330, in that the element of "the then present aspect of the case" when the testimony is offered, is omitted. It is difficult to see how there was occasion for the Court to attempt to state this rule in that case in deciding the question it then had under consideration. The respondent was indicted for forging, and uttering a draft on the Fire Association of Philadelphia, payable to one Green. The uttering of the bill was admitted and the only question was as to the genuineness of Green's signature thereto. The State was permitted to show when the Fire Association *"became convinced"* that the name of Green upon the back of the draft was a forgery. The Court held that this was in substance getting into the case as evidence, the opinion of the Fire Association upon the question of the genuineness of Green's signature, and as to the guilt of the respondent, and that it was inadmissible.

As it does not appear affirmatively by the exceptions that when this testimony of Dr. Foote was admitted, there was no evidence tending to show that Mrs. Foster had knowledge of what occured between him and Mrs. Hayes as testified by him, this exception, under the rule stated, cannot avail the contestants. To hold otherwise would require us to overrule all the cases cited, as well as many other decisions of this Court to the same effect.

13. Dr. Draper was in charge of the asylum while Mrs. Foster was confined there, and he was improved as a witness and expert by the contestants, and testified as to her condition at that time.

The proponents improved Dr. Foote as a witness and an expert in rebuttal. He stated that he had read the hypothetical question which the contestants had asked Dr. Draper, and had also read his testimony. The proponents against the exception of the contestants then asked this question: "Supposing Dr. Draper's diagnosis of the case to have been correct in 1876, and supposing that these facts referred to in the hypothetical question were true and that they occured after she left the hospital, what evidence would they present to your mind, and supplement that with the knowledge you have of Mrs. Foster, what answer would you make to the question?" The contestants first introduced expert witnesses on the subject of insanity to whom they put hypothetical questions. It is conceded that this gave the proponents the right to use the same kind of testimony in rebuttal, but it is contended that they should have been confined to the use of the same hypothetical questions which the contestants had used, and that it was therefore error to allow this question to be put to Dr. Foote. This contention cannot be sustained. The proponents might judge that some of the facts included in the hypothetical questions used by the contestants, would not be found by the jury, or that facts not included in such questions, but which the evidence tended to show, would be found to be established, and they had the right to so frame their questions as to call for the opinion of their expert witnesses upon any or all the facts which the evidence tended to prove.

It is now urged that this question did not limit Dr. Foote's knowledge of Mrs. Foster to what he had testified in respect to what he had known of her, and that in this there was error. We do not think that this is a fair construction to put upon the question. The language of an inquiry is always to be construed

so as to have and be given meaning with reference to the cir-
cumstances under which it is used. Dr. Foote had known Mrs.
Foster more or less intimately from her birth. She had lived in
his father's family for several years and had attended school for
some time at another place where he was the principal. Before
this question was asked him, he had testified fully as to all he
knew respecting her from his earliest acquaintance with her to her
death. In view of these facts, the question cannot fairly be said
to refer to or include any knowledge on his part, except that
which he had already stated in his testimony. We think both
the Court and counsel at the time, rightly and naturally under-
stood the question to refer to and include only such knowledge
on his part. In *Johnson* v. *Cent. Vt. R. R. Co.*, 56 Vt. 707, Dr.
Ray, an expert witness improved by the plaintiff and who had
visited and examined the plaintiff on three occasions, against the
defendant's exception was asked : "From what you have known
of this case heretofore, and what you have learned of his condi-
tion here to-day, what do you say about his being able to do
heavy work?" The objection to that question was put on sub-
stantially the same ground as the one under consideration, but
was not sustained. In overruling it the Court said: "The obvious
and natural construction that would be put upon the language of
the question, would be, that he was required to give an opinion
based upon what he had learned of his condition at the examina-
tions that he had testified he made."

This case is directly in point, and we hold that although the
question put to Dr. Foote was somewhat inartificial in form, yet
it was admissible in view of the circumstances under which it
was asked and admitted. If the question was proper, its admis-
sion would not be error because the witness misunderstood it or
gave an improper answer. *Fraray* v. *Gusha*, 59 Vt. 257. The
presiding Judge in his charge instructed the jury that the opin-
ion of expert witnesses would go for nothing unless they found
the facts established on which such opinion was based. Expert

testimony is necessarily admitted subject to the condition or possibility that the assumed facts on which it is based, may or may not be found by the jury to be proven.

The contestants did not specifically object to the form of this question.

Again, in the discussion upon the admissibility of this evidence and which immediately preceded the ruling of the Court admitting it and the asking of this question under that ruling, the contestants put their objection solely upon the ground that the same question, and that only, which was put to Dr. Draper could be put to Dr. Foote in rebuttal, and we think the Court had a right to understand from what then occurred and did understand the objection to the question to be made on that ground only. This would limit the exception, if well taken, to the precise ground then stated, which as we have already seen is not tenable.

It was competent for the contestants to have inquired of Dr. Foote what his opinion was as to Mrs. Foster's sanity or insanity, based upon the testimony of each witness who had testified to facts tending to prove sanity or insanity, assuming such testimony to be true. *State* v. *Hayden*, 51 Vt. 296. He testified that he had heard Mrs. Dickerson's testimony. The Court then allowed the proponents, subject to the exception of the contestants, to ask him the question: "What do those declarations of Mrs. Foster, testified to by Mrs. Dickerson, indicate to your mind as to her mental condition, assuming that Mrs. Dickerson testified to the truth?" and to which he replied, "I do not see anything that would indicate insanity in the answer that was given." It is now urged that this question was inadmissible, and that the only question permissible in view of the evidence, was a hypothetical one, enumerating the facts and declarations testified to by Mrs. Dickerson, and assuming them to be true. This question did not require the witness to weigh or reconcile conflicting evidence. In *State* v. *Hayden, supra,*

it was expressly held that it was not error to permit the question to be put in the form in which it was. In support of this exception, it is also argued that the jury could not have a correct idea of the question and answer without having their recollection of Mrs. Dickerson's testimony refreshed by embodying it in a hypothetical question. In reply to this argument, it need only be said that this Court cannot say as a matter of law that a jury cannot or will not understand and remember the questions put to witnesses, and their answers thereto. Every time a case is submitted to a jury, it is presumed that they will remember the evidence given by witnesses and the law applicable to the case as stated by the Court, and that they will properly weigh the former and apply the latter so as to return a just and legal verdict. In fact, every jury trial, from its beginning to its end, proceeds upon the theory and the presumption that the jury have constantly in mind all the testimony, including questions as well as answers thereto, which has been admitted at any stage of the trial. Should the trial court deem it necessary or expedient to refresh the recollection of the jury as to the testimony admitted, it can cause it to be done as a matter wholly within its discretion.

14. The contestants introduced the testimony of Dr. Fassett, one of the physicians who certified to the insanity of the testatrix at the time she was comitted to the insane asylum. He testified that he had no doubt as to her being insane at that time. He further stated that he did not know that he saw her after her return from the asylum until April, 1879, but from that time to the death of her husband in November, 1885, he saw her from time to time and occasionally treated her professionally. He narrated fully all he observed and learned in regard to her physical and mental condition during this period. Subsequent to the time he made the certificate, he made no examination of her with a view of determining her sanity or insanity, and was not asked to give

his opinion, and did not give it, as to her sanity or insanity, after she was released from the asylum.

Dr. Hamilton, a physician and expert, improved by the proponents in rebuttal, was asked in his direct examination the question : " Assuming the condition of Mrs. Foster to have been as stated by Dr. Fassett, what do you say about her recovery from this disease of the mind which she might have had in 1876, if she had any ?" The contestants objected to this question, and insisted that the witness should take the *whole testimony* of Dr. Fassett as the basis of his answer. The Court then said to the witness : " Assuming she was crazy in 1876, what is your opinion of her having recovered at that time in 1885, taking it just as Dr. Fassett states it, if you have read his deposition ?" The witness stating that he had not read the whole deposition, the question put by the Court was left open, and later, the witness having read the entire deposition, was recalled and the question again asked, against the exception of the contestants, and the answer, "I should say she had recovered," was admitted.

It is now urged that this was error, for the reason that the opinion and conclusions of Dr. Fassett were made a part of the basis of the opinion of Dr. Hamilton. We think the question only called for Dr. Hamilton's opinion upon the facts to which Dr. Fassett had deposed, showing the physical and mental condition of Mrs. Foster from April, 1879, to Nov., 1885, as bearing upon the question whether she had recovered in 1885, assuming that she was insane in 1876, as claimed by the contestants. If this were not the fair, natural construction to be put upon this question, and were it open to the objection claimed, the contestants could take nothing by their exception on this ground, for the reason that they insisted that Dr. Hamilton should predicate his opinion upon the *whole testimony* of Dr. Fassett, including his opinion as well as the facts stated by him. It would indeed be a strange proceeding to permit a party in the court below to insist upon a modification of a question so that it conforms to his

Catherine Foster's *Exrs. v.* Delia S. Dickerson, *et al.*

views, and having thus obtained such modification, to then allow him to set it up in this Court as reversible error. Such is not the law. *Tucker* v. *Baldwin*, 13 Conn. 136, (33 Am. Dec. 384); *Minot* v. *Mitchell*, 30 Ind. 228, (95 Am. Dec. 685).

Again, were the question open to the objection urged, the error would be in favor of the contestants, as the opinion of Dr. Fassett so far as expressed in regard to Mrs. Foster's sanity or insanity, supported their claim that she was insane. If Dr. Hamilton gave this opinion any weight, it would make for them. "A party shall not reverse a judgment for an error which is beneficial to him." *Brown* v. *Caldwell*, 10 Serg. & Rawle 114, (13 Am. Dec. 660); *McGowen* v. *West*, 7 Mo. 569, (38 Am. Dec. 468); *People* v. *Call*, 1 Denio 120, (43 Am. Dec. 655); *Lucas* v. *New Bedford & Taunton R. R. Co.*, 6 Gray 64, (66 Am. Dec. 406). "This court never reverses a judgment because of errors in the proceedings in the County Court which have in no wise harmed the excepting party." *Sampson* v. *Warner*, 48 Vt. 247; *Wheelock* v. *Moulton*, 13 Vt. 430; *State* v. *Kibling*, 63 Vt. 636.

The views already expressed in this connection and in regard to Dr. Foote's testimony, dispose of the remaining exceptions taken to the admission of Dr. Hamilton's and Dr. Clark's testimony.

15. The contestants excepted to the proponents being allowed to read in evidence the first five questions and answers of the testimony of Mrs. French, given in rebuttal before the Probate Court. The case had been fully tried in the Probate Court and full minutes of the testimony taken by a stenographer who had furnished a copy thereof to the Probate Court. The parties entered into a stipulation by which it was agreed that the testimony so taken and used before the Probate Court, of witnesses that were deceased, or unable to attend Court by reason of sickness or accident, or absent from this State at the time of the trial in the County Court, might be read from the copy of their testimony furnished the Probate Court, to the same extent

that such witnesses might testify under the law and rules governing the admission and rejection of evidence, if they were present in court and improved as witnesses. It was further stipulated that the witness, Mrs. French, at the option of the proponents, should be considered unable to attend court by reason of sickness. The proponents in their opening called her, and she testified upon several material issues and was fully cross-examined. The witness was about ninety years old, and infirm, and after her testimony in the opening was given, she was obliged to go to and remain at her home in Bennington on account of her infirm health, which was apparent while she was in court. Her testimony before the Probate Court, which was read in evidence, was material only on the question of undue influence, an issue raised on trial by the contestants' evidence, and which was an issue that the proponents in the opening of their case were not required to make by their evidence or to forefend against. Until it was raised by the evidence of the contestants, her testimony on this issue was inadmissible, if objected to. A stipulation of this kind is not to be construed strictly like a plea in abatement or other dilatory pleadings, but fairly and liberally in view of the intention and purpose of the parties in making it, and for the furtherance of justice.

When the parties entered into it they were acquainted with her and knew her great age and infirm health, as well as the distance she would have to travel to attend court, and were well aware that humanity on their part as well as prudence on her own, might require that she should not be compelled to appear in court, although she might possibly be physically able to do so. We do not think that the provision, that, at the option of the proponents, she should be considered unable to attend court by reason of sickness, was intended as a restriction, but as an enlargement of their right to use her testimony given in the Probate Court, and its effect was to give them the right, at any stage of the trial, to use so much of such testimony as was relevent to

any material issue, and concerning which she had not testified in the County court, without regard to whether she was able to attend court at the time such testimony became material and was offered in evidence. Under this view of the matter, the testimony was properly admitted.

Again, by the express terms of the stipulation, the testimony taken and used before the Probate Court, of a witness, " *unable to attend court by reason of sickness,*" might be read in evidence at the trial in the County Court. There was no limitation as to the time when such sickness must supervene; hence, if at the time the testimony became material and was offered in evidence, the witness was unable to attend by reason of sickness, his testimony taken before the Probate Court was then admissible under the stipulation, without regard to whether he had previously been present at the trial in the County Court and testified upon some branch or phase of the case. In other words, whenever, during the trial, it became necessary for either party to offer in evidence any part of such testimony, one of the tests of its admisibility under the stipulation was this : "Is the witness unable to attend court by reason of sickness?" If so, his testimony was admissible under the stipulation. This provision applied to Mrs. French as well as to all other witnesses who might be unable to attend court for this reason. Before admitting this testimony, the trial court found the fact that she was then unable to attend court by reason of sickness. When admitted, this testimony was material and only admissible in rebuttal at that time, as before stated.

In their brief the contestants say : "The proponents having procured the attendance of this witness, and examined her as a witness, *made their option and were bound by it.*" This is the only reason which they give for sustaining this exception. The option which the proponents had the right to exercise, was to treat her as unable to attend by reason of sickness, although she was in fact in such health as to be able to attend. It would be a

perversion of language, as well as strange logic to hold that by securing her attendance at the trial during such time as she was able to attend, they thereby elected to exercise their option to treat her as unable to attend. This option could only be exercised by not having her present at court when she was able to be there. It could be exercised only during such time as Mrs. French was in fact able to attend court, and it was the right to treat her as sick when she was in fact well. When she became sick, and thereby unable to attend court, there was then nothing in her condition to which the option could apply. When offered and admitted, this testimony had become admissible under another provision of the stipulation, which was that she was unable to attend Court by reason of sickness. The proponents had a right to avail themselves of each and of all causes for which it was stipulated this testimony might be used.

This exception cannot be sustained for another reason. Where parties litigant enter into a stipulation of this kind, and disagreeing as to its effect, it becomes necessary for the trial court to construe it to determine the admissibility of evidence offered under it, no exception lies to the ruling of the Court construing such stipulation, if it is fairly susceptible of the construction put upon it by the Court. This stipulation was fairly susceptible of the construction which the court below must have given it, in order to admit this testimony.

16. It was not error in the charge to state to the jury the standard of duty of a person who puts his name as a subscribing witness to a will as defined by a great Chancellor After stating this standard, the learned Judge immediately instructed the jury that while this standard of duty was plainly proper, it was rarely obtained or observed in fact by the general run of subscribing witnesses, and that it was for them to say how far it had been in the case on trial. In this connection, speaking of witnesses whose evidence bore upon the question of mental capacity, the Court had also told the jury that "ordinarily those who came nearest to

Catherine Foster's *Exrs. v.* Delia S. Dickerson, *et al.*

the very time of making the will would be most valuable, if, in
applying the tests of truth to these as to all witnesses, they seem
to be worthy of credit. Therefore the testimony of the subscrib-
ing witnesses to the will is to be carefully considered and scru-
tinized." By this instruction the weight to be given to the tes-
timony of this class of witnesses was left wholly to the determin-
ation of the jury, subject to the same tests of truth and the same
inquiry as to their knowledge of the facts to which they deposed
as was to be applied to other witnesses who had a like opportuni-
ty to observe and know the testatrix at or near the time of the ex-
ecution of the instrument proposed for probate. The jury were
not, as claimed by contestants' counsel, in effect told that the tes-
timony of an attesting witness was entitled to greater weight
than other witnesses having the same means of knowledge, and
we do not think that they could have so understood the charge.

17. Declarations of the testatrix made after the execution
of the proposed instrument, were given in evidence, and in re-
gard to their bearing upon the question of capacity, the Court
instructed the jury that "subsequent declarations are admissible
in behalf of the contestants in support of the issue of incapacity
or undue influence providing they tend to show incapacity
at the time they were made, but if they have no tendency to
prove such contemporaneous incapacity, they are not admissible
against the will." It will be observed that the learned Judge
used the identical language of this Court in delivering its opin-
ion in *Crocker* v. *Chase,* 57 Vt. 420. It is now urged that this
was error for the reason that the jury must have understood from
this language that they were not at liberty to consider her dec-
larations made subsequent to the making of her will upon the
question of her relation to the beneficiaries under the will and
the contestants. This contention is not sound. The charge is to
be considered as a whole. This part of it was specifically limited
in its application to the question of mental capacity and the jury
must have so understood it. The jury had already been instruct-

ed as follows: "The proposition that Mrs. Foster's declarations are only to be considered on the question of mental capacity has some exceptions. Her declarations tending to show knowledge on her part of the existence of a fact otherwise established were admissible, and are to be considered as evidence of such knowledge; this applies to her declarations that she knew of the reputation of her husband as to his conduct with other women. Her declarations also tending to show her feelings toward the different parties to this matter were admissible, and are to be considered as evidence of such feelings." After stating the rule respecting her subsequent declarations as evidence on the question of mental capacity, and in connection therewith, the Court also said to the jury: "But as I think I have before stated, her declarations as to her intentions in the disposition of her property are proper to be regarded as tending to show that the testatrix intended to make a disposition of her property similar to that which she did make; and declarations at the time the will is being made are admissible as a part of the act then being done. Her declarations as to feelings towards these relatives interested in this controversy were also admissible to show the fact of her feelings, and this whether these declarations were in letters, or made by word of mouth to individuals." The jury could not have been told in more apt language that they were to consider all the testatrix's declarations, whenever made, in determining the question of her affection for or prejudice against any of the parties interested in this controversy.

18. The contestants presented twenty-one requests for instructions to the jury. Under the holding of this Court in *Westmore* v. *Sheffield,* 56 Vt. 239 and *State* v. *Hopkins,* 56 Vt. 250, the Court might well have declined to consider or comply with any of them on account of their great number and varied character. The contestants now complain that the Court did not comply with their 8th, 9th, 10th and 12th requests, but we think this complaint groundless. The Court fully complied with

them, by reading them to the jury and telling them in effect that they embodied good law. If the contestants desired further instructions on the points embraced in these requests, they should have asked for such further instructions at the close of the charge. This they failed to do.

19. The contestants excepted to the charge "in regard to undue influence with direct reference to the will," and to all the Court said "upon the subject of proving undue influence."

To set aside a will on the ground of undue influence, it must be established that the influence was exerted upon the very act of making the will. The fact that the testator was under the general and even controling influence of another person in the conduct of his affairs, will not suffice to invalidate the will, unless that influence was intentionally and specifically exerted upon the testatmentary act. *Small* v. *Small*, 4 Greenl. 220; S. C. 16 Am. Dec. 253 and note; *Trost* v. *Dingler*, 118 Penn. St. 259 (4 Am. St. Rep. 593); 1 Redf. on Wills (3rd Ed.) 480, 487.

The degree of influence necessary to be exerted over the mind of a testator to render it undue influence, must be such as to induce him to act contrary to his wishes, and to make a will and disposition of his property other than he would have made if left entirely to his own discretion and judgment. His free agency and independence must be overcome and he must by some domination or control exercised over his mind, be constrained to do what is against his will, and what he is unable to refuse and too weak to resist. A moderate and reasonable solicitation, entreaty and persuasion, though yielded to, if done intelligently, without constraint, and from a sense of duty will not vitiate a will, if in other respects valid. *Appeal of Dale*, 57 Conn. 127; (17 Atl. Rep. 757.) In *Gilbert* v. *Gilbert*, 22 Ala. 529 (58 Am. Dec. 258) what constitutes undue influence is well stated as follows: "Undue influence, legally speaking, must be such as in some measure, destroys the free agency of the testator; it

must be sufficient to prevent the exercise of that discretion which the law requires in relation to every testamentary disposition. It is not enough that the testator is dissuaded by solicitations or arguments from disposing of his property as he had previously intended; he may yield to the persuasions of affection or attachment, and allow their sway to be exerted over his mind; and in neither of these cases would the law regard the influence as undue. To amount to this, it must be equivalent to moral coercion—it must constrain its subject to do what is against his will, but which from fear, the desire of peace, or some other feeling, he is unable to resist, and when this is so, the act which is the result of that influence is vitiated." *Thornton's Exrs.* v. *Thornton's Heirs*, 39 Vt. 122; *Small* v. *Small*, 4 Greenl. 220; S. C. 16 Am. Dec. 253 and note; *Woodard* v. *James*, 3 Strob. L, 552, (51 Am. Dec. 649); *Taylor* v. *Kelly*, 31 Ala. 59 (68 Am. Dec. 150); 1 Redf. on Wills (3rd Ed.) 484,–487.

We think the charge fairly, clearly and correctly states the law applicable to this branch of the case. The jury could not have understood, from any language used by the learned Judge, as is now urged by the contestants, that there must be direct proof of undue influence in respect to the will, and that influence and control in matters not connected with the will, the relation of the parties, the surroundings of the testatrix, and the will itself, were not to be considered as evidence tending to show undue influence in respect to the will. They were distinctly told that undue influence might be established like other facts by circumstantial evidence, and that ordinarily it must depend more or less upon that kind of evidence. The relations of Mrs. Hayes and the other legatees of the will to the testatrix, their control over her as to her business and her household and personal matters, her condition of mind and body, the provisions of the will and all other circumstances which the contestants claimed tended to prove undue influence, were called to the attention of the jury, and they were left to decide the question

of undue influence upon all these facts taken together. In addition to this, the Court said to them : "If you should find from the evidence that at and about the time when the will was executed the testatrix was, in other important particulars, so under the influence of the donees in the will, that as to them she was not a free agent, but was acting under undue influence, then that is a fact to be considered with other facts satisfactorily proved on the claim of undue influence as to the will itself, * * * it is for you to say whether upon all the evidence in the case the defendants have established by a fair balance of proof, that is, have they fairly satisfied you that this proposed will was induced by undue influence of the persons charged."

The Court was not bound to tell the jury just how much evidence would be sufficient to sustain a verdict upon the ground of undue influence as requested by the contestants' 14th, 17th and 18th requests. "It was not the duty of the Court to isolate a part of the case from the other facts which affect it, and make this unreal case the subject on one separate branch of his charge." When it submitted to the jury on this subject all the facts bearing upon it, as it did, it performed its full duty. *Thornton's Exrs.* v. *Thornton's Heirs, supra.*

This disposes of all the exceptions urged in this Court.

*Judgment affirmed with costs. Judgment to be certified to the Probate Court.*

Ross, Ch. J., dissents as to points 12, 13, and 15.

Dissenting views of

ROSS, Ch. J. While I concur in the decision of most of the points covered by the opinion, I dissent with reference to a few points.

Point 12, relates to the exception taken to the testimony of Dr. George Foote, and is stated in the exceptions as follows : "Dr. George Foote, a witness introduced by the proponents, was allowed to testify subject to the objection and exception of the contestants, that he knew of the fact that Mrs. Foster was con-

fined in an asylum from what Mrs. Hayes told him, and that she, Mrs. Hayes, requested him to assist her and take Mrs. Foster into his, Dr. Foote's, institution and to remove her from Brattleboro. Dr. Foote's testimony, pp. 51 and 52, may be referred to." This is the entire allusion in the exceptions to this point. Recurring to the stenographer's minutes, we find this, "Q. You have just mentioned a circumstance? A. Yes, sir; I learned. (Objection interposed). Q. You have mentioned a circumstance of Mrs. Foster's being in an asylum in 1876. A. Yes, sir. Q. How did you come to know that? A. From this fact, that Mrs. Hayes come to me to have me—, Objection interposed.

Mr. Hayes. The line of this examination is this: We think it competent to show in explanation of the will that it was made in recognition of a very great service rendered by Mrs. Hayes in 1876, when she befriended Mrs. Foster and she enlisted the services of Dr. Foote at that time, and we offer it to show that the will ran along in the line of her intentions, and as showing the motive of the will, and we confine it to that issue.

The Court. It should be limited to showing the relations that existed between Mrs. Foster and the natural objects of her bounty.

Mr. Hall. We object to this witness testifying what Mrs. Hayes did and said to him in reference to this matter.

The Court. He proposes only to call out the knowledge of the witness in respect to the attitude of Mrs. Hayes towards Mrs. Foster so far as he knows it.

Q. Do you know of any act of Mrs. Hayes in 1876 which was directed towards the relief of Mrs. Foster? A. I do. Q. What was it? A. She came to my asylum, Mrs. Hayes did, and requested me to assist in—

(Mr. Hall. We desire an exception.)

and take Mrs. Foster into my institution and remove her from Brattleboro."

This is all that the copy by the stenographer contains on this subject. It will be observed that the offer made by the proponents' counsel does not claim that this testimony was admissible on the ground that it had already been shown that this action by Mrs. Hayes had come to the knowledge of Mrs. Foster, nor on the ground that they expected to show such knowledge by subsequent testimony. The ruling of the Court admitting it does not require such knowledge to be shown, antecedently, or subsequently. The offer and ruling treat it as admissible standing alone, and disconnected from any evidence to show that Mrs. Foster knew of these acts of Mrs. Hayes. We are all agreed, that these acts of Mrs. Hayes could not properly be shown unless they were known to Mrs. Foster. They could not influence her in making her will in favor of Mrs. Hayes against her own sister, unless so known. The opinion after reviewing several cases and citing others concludes : "As it does not appear affirmatively by the exceptions that when this testimony of Dr. Foote was admitted, there was no evidence tending to show that Mrs. Foster had knowledge of what occurred between him and Mrs. Hayes, as testified by him, this exception under the rule stated cannot avail contestants." The rule referred to is thus stated : "We think the true rule is, that to assign legal error in the admission of testimony, the exceptions must show affirmatively that 'in the then present aspect of the case' the testimony received was not admissible, unless accompanied with an offer to introduce other evidence which would make it admissible." Which, as it is applied to this case, means that when testimony is offered inadmissible, unless supported by other testimony, and when the exceptions make no mention of any such supporting testimony, but do not specifically state that no such supporting testimony was offered or admitted, the Court will presume that such supporting testimony was offered and admitted. This requires a bill of exceptions, to avail the excepting party, when such testimony is admitted against his objection, to be drawn with the certainty

of a plea in abatement, or so as to negate every possible state of the testimony that might render the testimony objected to admissible. I never have understood that exceptions were required to be drawn with such certainty, for any purpose. This Court said, in *Westford* v. *Essex*, 31 Vt. 461: "Exceptions are not to stand upon the footing of pleadings, where no intendment is to be made in favor of the party thus setting up his right, but are to be understood in the usual and ordinary sense of common communication, a plain statement of the facts for both parties for the Court to apply and declare the law arising upon them."

In *Conn. & Pass. R. R. R. Co.* v. *Baxter*, 32 Vt. 815, this Court said in reference to the admission of this class of testimony: "We think that in all cases where testimony is offered that in the present aspect of the case is inadmissible, unaccompanied with any assertion on the part of the attorney offering it, that he intends, and expects to introduce other evidence, which, when in, will make such testimony admissible, the testimony, if objected to, should be rejected, and to admit it is error that is not cured by the Court's directing the jury in their charge to lay it out of the case."

Applying these two rules to the exceptions in this case on this subject, I think this Court is to pass upon this exception just as it is left by the exceptions, making no presumption in favor, or against, the excepting or prevailing party. When so applied, error is manifest. No presumption has to be made or negated to show error. The opinion places stress upon the clause, "in the then present aspect of the case," contained in the extract from the opinion in *Conn. & Pass. R. R. R. Co.* v. *Baxter*, *supra*. But by the rule taken from *Westford* v. *Essex*, the exceptions give this Court, "the then present aspect of the case" in which the objectionable testimony was received. They are a common communication drawn up for that purpose. I agree that error must affirmatively appear from the exceptions as drawn, but not as against every conceivable state of the case

which might possibly have appeared but is not stated to have appeared. This Court is to base its judgment upon the record as made by the exceptions.

I think a careful inspection of the cases cited in the opinion will show that not more than one of them, if one, support the opinion, when the laguage used, and relied upon for support, is read and understood in the light of the facts of the case. Some isolated expressions give some countenance to the holding in the opinion, but when applied to the facts in regard to which they were used, they do not, in my judgment. The facts in reference to which the strongest expressions are used, in *Tenney* v. *Harvey*, 63 Vt. 520, do not appear. I did not sit in that case and have no knowledge of them. On the facts as left by the exceptions in this case, with no presumptions made for or against the excepting party, there was manifest error in admitting this testimony of Dr. Foote. I think the excepting party did all that he was required, when he made such error appear, by his draft of the exceptions, and that the opinion on this point is a departure from what has heretofore been considered the certainty with which error must be made to appear.

I also think it was error to allow the question put to this witness, as an expert, in rebuttal. It is well established that, in taking the opinion of an expert witness, the facts upon which his opinion is based, must go to the jury in connection with his opinion, that the jury my be able to judge of the weight which they ought to give to his opinion, dependent, sometimes, upon whether they find the facts, upon which the opinion is given, established. In *Fairchild* v. *Bascomb*, 35 Vt. 416, a well considered case on this subject, after stating the manner in which questions should be put, it is said: "Then the jury can know all the facts and grounds on which the opinion is based," and in *Wetherbee* v. *Wetherbee*, 38 Vt. 460, it is also said: "In any case the jury ought to know upon what basis of facts the opinion is founded, for its pertinence depends upon whether they find the

facts upon which it rests." It is usual to embody the facts, or supposed facts, upon which an opinion is desired, in the interrogatory, or to have the witness state the facts on which he founds his opinion. In *People* v. *Aikin*, 66 Mich. 460 (II St. R. 524) it is held, that "An expert can never be safely permitted to state that he has read or heard the testimony without stating the particulars of the evidence, the facts, upon which he rests his conclusions." Doubtless this is the safe rule of practice. This Court has departed from it, first in *Gilman* v. *Strafford* 50 Vt. 723, where the opinion of experts was taken upon facts stated in a deposition, and secondly, in *State* v. *Hayden*, 51 Vt. 296. The deposition would go to the jury. They could know the facts on, which the experts founded their opinion. In *State* v. *Hayden* the State gave no testimony on the subject of insanity, and was allowed to ask experts who had heard the testimony of the respondent on this subject, their opinion based upon all the facts which the respondent's witnesses had detailed. The facts were not voluminous, and were recently detailed to the jury. But in neither case did this Court attempt to vary the rule established in the earlier cases cited, that the jury must know the facts upon which the opinion is based. The contestants embodied the supposed facts on which they took Dr. Draper's opinion in an interrogatory. This interrogatory put to Dr. Draper was used a week or more before it was used to Dr. Foote by the proponents. It involved the consideration of a large number of supposed facts, covering nearly two pages of closely printed matter. It was not read to Dr. Foote nor to the jury. To allow an expert witness to answer such a question, under the circumstances, was an abrogation of the rule requiring the jury to have knowledge of the facts on which the opinion is required. This question not only was allowed to be answered without being read to the jury, but the witness was asked to supplement the facts embraced in the question put to Dr. Draper with the knowledge which the witness had of Mrs. Foster. He had known her from her birth.

She had lived in his father's family, ten or more years, after her mother died, when she was five years old; and had attended school for some time, at another place, where the witness was principal. Some three or four weeks before, he had testified quite fully to his knowledge of her. It is inconceivable that the witness had detailed all he had known of Mrs. Foster. The question as put against the exception of the contestants, and as repeated two or three times, and by the court, did not require the witness to base his opinion upon the facts embraced in the question put to Dr. Draper, supplemented by the facts which the witness had detailed upon the stand, but allowed him to use any knowledge he had of Mrs. Foster, whether detailed upon the witness stand, and whether such knowledge came to him by personal observation, or by heresay. I think, the question was objectionable and erroneous for two reasons. If confined to the facts in the question and the facts detailed by the witness when first on the stand, after the lapse of time which had intervened since the question was used, and since the witness had testified, the jury could not have in mind the facts upon which the witness based his opinion. The opinion holds that it must be presumed that the jury could, and did, have all the facts on which the opinion was asked in mind. I do not know what sense there is, in a matter of practice, which can be avoided, in presuming what every man must know to be untrue. I have a fair memory, some of my brethren better memories. But none of us could, after the lapse of time which had intervened recall all the facts embraced in this question, and detailed by the witness when first on the stand. It is contended also that the County Court was misled by the first objection insisted upon by the contestants. I do not think this can be true. After the court had overruled this objection. the question was modified, and again objected to. The court could not well understand that counsel was insisting upon an objection just overruled, to which he had saved an ex-

ception. The objection to the modified question, the court, without calling upon counsel to state what it was, overruled; thereby holding, that the objection, whatever it might be, was groundless. Again, the question as allowed, did not confine the witness to the facts which he had detailed when first on the stand. It was easy to have done so. It was highly important that the question should have been carefully framed, considering the witness's long acquaintance with Mrs. Foster, the impossibility of the witness having detailed when on the stand all he had known of her, the possibility, not to say probability, that the witness might, as he did, as admitted on cross-examination, include as knowledge what he had been told by friends, as well as what he had known personally, and also, that the witness was interested, being a brother to one of the principal legatees. When a party puts a question, improper in form, he cannot invoke the doctrine of *Frary* v. *Gusha,* 59 Vt. 257, that an improper or an inadmissible answer to a proper question is not reversable error. Against such an error a party cannot by any form of inquiry protect himself. When he puts his question, so as to invite an inadmissible answer and obtains it, the answer falls within the principle of *State* v. *Meader,* 54 Vt. 126, and the cases there cited. By the improper form of the inquiry he has elicited the inadmissible testimony. It is in the case, by his own fault. My brethren rely upon *Johnson* v. *Central Vt. R. R. Co.,* 56 Vt. 707 as holding the question proper in form. I do not understand the case as so holding. It only holds that under the circumstances of that case, entirely different from the circumstances of this case, the question in this form could not have misled the witness. The witness was not shown to have any knowledge of the plaintiff except what he gained on three occcasions when he examined him, and to which he had recently and fully testified. It was not shown that the witness was in fact misled. It is so shown in this case. Under the circumstances of that case it was properly held that

Catherine Foster's *Exrs. v.* Delia S. Dickerson, *et al.*

"The obvious and natural construction that would be put upon the language of the question would be, that he was required to give an opinion based upon what he had learned of his condition at the examinations that he had testified he made, and we have no doubt the doctor so understood it. "The language of an inquiry is always to be given meaning with referance to the circumstances in which it is used. The holding is not that the language of the inquiry is proper, but that there was nothing to show that it probably would, or did, mislead the witness in that case. Here it is shown affirmatively that Dr. Foote was misled, and considered, in giving his answer, what he had been told, as well as what he knew personally. When, as is held, an expert witness, on a grouping of facts, may be asked to give his opinion upon the identical question on which the jury are to pass, if, he, because skilled in regard to the subject, may give his opinion without the jury having clearly in mind, the facts, or group of facts on which it is based, the decision might as well be left with the witness, as it practically is. This class of testimony, at best, is uncertain and dangerous, and especially so when given by an interested witness. I think, under the circumstances of this case the allowance of this question was clearly reversible error.

15. I do not think, under the stipulation, Amelia French's testimony given in rebuttal before the Probate Court could be read. Except by the terms of the stipulation, that testimony was not admissible, so long as the witness was living. It did not stand like her deposition taken for cause, which cause was shown to exist when the deposition was offered. The stipulation was specific as to this witness. It gave the proponents the option to call the witness and use her, in person, or to treat her as sick and unable to attend, and read all her testimony given before the Probate Court. There is no provision in the stipulation which allows them to produce and use her, or any other witness, in part, and then supplement her testimony given in person with her testimony given before the Probate Court. They

elected to treat her as well. They called and used her as such. When they did so, they took the risk of her remaining able to be present and testify in rebuttal. Under the exercise of the option by the proponents, she stood like any other witness, able to attend Court. She was not absent from the State. The exercise of their option took her from the class "unable to attend Court by reason of sickness or accident." If the counsel had foreseen that a witness called and used, in part, might be unable to remain during the trial, they might have stipulated that the balance of the witness' testimony given before the Probate Court might be read. It might have been wise to have made such a provision. But no such provision or stipulation was made. It is not for the court to import such provisions into a stipulation, as necessities may require.

It is to construe the stipulation as made, and not to add to it by construction or otherwise. I find no provision in the stipulation, for the court to construe, on this subject. In my judgment this allowance by the court was error.

For these reasons, I should reverse the judgment. I concur in the decision of the other points.